The **UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**John Joseph KILLIAN, Defendant-Appellant.**

**No. 11967.**

United States Court of Appeals
Seventh Circuit.

June 10, 1957.

On Petition for Rehearing
Aug. 19, 1957.

David B. Rothstein, Chicago, Ill., M. Michael Essin, Milwaukee, Wis., Meyers & Rothstein, Chicago, Ill., and Basil Pollitt, Brooklyn, N. Y., of counsel, for appellant.

Carl G. Coben, Attorney, Dept. of Justice, Washington, D. C., Robert Tieken, U. S. Attorney, Chicago, Ill., William F. Tompkins, Asst. Atty. Gen., Harold D. Koffsky, Cyril S. Wofsy, Attorneys, Dept. of Justice, Washington, D. C., John Peter Lulinski, James B. Parsons, Asst. U. S. Attys., Northern District of Illinois, Chicago, Ill., for appellee.

Before DUFFY, Chief Judge, and FINNEGAN and LINDLEY, Circuit. Judges.

DUFFY, Chief Judge.

Defendant was convicted on both counts of a two-count indictment charging violation of Title 18 U.S.C. § 1001.[1]

1. Section 1001: "Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any

This section is incorporated by reference in the Taft-Hartley Act, 29 U.S.C.A. § 159(h).[2] The indictment charged defendant made false statements to a Government Agency, namely, the National Labor Relations Board, in a matter within the jurisdiction of that Board.

On December 9, 1952, defendant executed an affidavit of a noncommunist union officer. The form and wording of the face of the affidavit appears in the margin.[3]

The first two instructions on the reverse side were, in pertinent part, as follows:

"Who Must File.—This affidavit must be filed by each officer of a labor organization before that organization may receive the help of the National Labor Relations Board. An affidavit must be on file for each officer listed in your Constitution and Bylaws.

"Where To File.—Local Labor Organizations must file this affidavit with the Regional Office of the National Labor Relations Board with which they usually file cases." It is without dispute that the Regional Office in question was located at Chicago, Illinois.

From October, 1952 to March 1, 1953, appellant was an officer of Local 1111, United Electrical, Radio and Machine Workers of America (UE). This Union had a labor contract with Allen-Bradley Company of Milwaukee. On June 9, 1952, a special meeting of the officers of Local 1111 was held. The principal, if not the sole, business transacted at the meeting was the execution of noncommunist affidavits on the form previously described. As each officer signed his affidavit, it was notarized and then stacked on a desk with the affidavits previously notarized. The affidavits were then

false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both. June 25, 1948, c. 645, 62 Stat. 749."

2. Sec. 159(h): "No investigation shall be made by the Board of any question affecting commerce concerning the representation of employees, raised by a labor organization under subsection (c) of this section, and no complaint shall be issued pursuant to a charge made by a labor organization under subsection (b) of section 160 of this title, unless there is on file with the Board an affidavit executed contemporaneously or within the preceding twelve-month period by each officer of such labor organization and the officers of any national or international labor organization of which it is an affiliate or constituent unit that he is not a member of the Communist Party or affiliated with such party, and that he does not believe in, and is not a member of or supports any organization that believes in or teaches, the overthrow of the United States Government by force or by any illegal or unconstitutional methods. The provisions of sections 286, 287, 1001, 1022, and 1023 of Title 18 shall be applicable in respect to such affidavits. As amended June 23, 1947, 3:17 p. m.

E.D.T., c. 120, Title I, § 101, 61 Stat. 143; Oct. 22, 1951, c. 534, § 1(c, d), 65 Stat. 601."

3. "United States of America
National Labor Relations Board
Affidavit of Noncommunist Union Officer
Local 1111, United Electrical, Radio and Machine Workers of America (UE)
United Electrical, Radio and Machine Workers of America (UE)
The undersigned, being duly sworn, deposes and says:
1. I am a responsible officer of the union named below.
2. I am not a member of the Communist Party or affiliated with such party.
3. I do not believe in, and I am not a member of nor do I support any organization that believes in or teaches the overthrow of the United States Government by force or by any illegal or unconstitutional methods.
   Local 1111, United Electrical, Radio and Machine Workers of America (UE)
   United Electrical, Radio and Machine Workers of America (UE)
   Signature: John J. Killian
   Address: 1233 S. 17th Street
   Milwaukee 4, Wisc."
"(Perforated)
"REC'D

placed in an envelope and sent to the National Labor Relations Board. The stamp of the Board on the affidavits shows they were received at the Chicago office of the Labor Board on December 11, 1952, the second day after the signing. After the Board determined that all of the officers had executed affidavits, Local 1111 was notified that it had complied with the Act and could avail itself of the facilities of the Board.

■ Defendant's first argument is that the allegedly false statement was not made within the jurisdiction of a Government Agency. Section 1001 requires, as an element of the crime, that such statement be "made within the jurisdiction" of an Agency of the United States. We think this contention is entirely without merit. The affidavit came within the jurisdiction of the Board as soon as it was filed. The Board had the power to act upon it, and did, in fact, find Local 1111 to be in compliance under the Labor-Management Relations Act because the affidavit of defendant and the affidavits of the other officers had been filed.

■ Defendant next argues that the Government did not prove that he knowingly filed the affidavit or caused it to be filed. Section 1001 is directed to the making of a false statement "in any matter within the jurisdiction of any department or agency of the United States." There is no requirement in that section as to the filing of an affidavit. However, in order to be within the jurisdiction of the National Labor Relations Board, Section 9(h) requires that such affidavit must be on file with the Board.

In response to a question on oral argument, defendant's counsel assured us that he was not contending that the Government must show that defendant, personally, filed the affidavit with the Board. However, he did insist there was no showing that defendant caused the affidavit to be filed. We do not agree. The defendant is a well-educated man. He knew the purpose of the special meeting was to have the affidavits executed. He is presumed to have read what he signed.

Certainly, there is no evidence to the contrary. The instructions on the affidavit specifically stated that the affidavit had to be filed with the Board if any Union Local were to be entitled to receive the help of the Board. The affidavits were kept together and were placed in one envelope. They were promptly received by the Chicago office of the National Labor Relations Board. We hold there was sufficient proof that defendant caused the alleged false affidavit to be filed with the Board.

■■ Defendant argues the Government failed to prove he was a member of the Communist Party or was in affiliation with the Communist Party on December 9, 1952, the date when he executed the affidavit. It is true, the record contains no evidence pin-pointing the membership or affiliation on December 9, 1952, but we do not think such proof was necessary to sustain the judgment of conviction.

The proof discloses defendant was a member of the Student Branch of the Dane County, Wisconsin, Communist Party as early as October, 1949. Meetings were held three or four times a month and defendant was a regular attendant. Some of the group meetings were held at his apartment. These meetings were open only to members of this Communist Party group, and a special procedure was used in order to gain admission. These meetings were screened by the playing of phonograph records to avoid suspicion. Defendant paid his dues to the Chairman of this group.

In November or December, 1949, defendant identified himself as a Section Organizer of the Communist Party. Defendant explained to Robert Sullivan that the Communist Party in Madison, Wisconsin, had been broken down into small groups for security purposes; that each group had particular assignments such as the National Association for the Advancement of Colored People, Young Progressives of America, and certain religious groups.

Defendant was the speaker at various Communist group meetings. At some of them he urged all present to purchase

subscriptions to the Daily Worker and, on one occasion, solicited funds for the payment of a debt for Party literature. In the spring of 1951 defendant attended a meeting at the home of Jack Kling, the State Chairman of the Wisconsin Communist Party. Defendant attended other meetings where Kling spoke, including one at which Kling stated that those present must accept the fact that there never can be any permanent peace between capitalistic and socialistic countries. Kling pointed out this doctrine had been laid down at an International Conference of the Communist Party in 1927 and those present would have to accept it. Kling also stressed the importance of Communists gaining control of the labor movement in this country.

About the middle of November, 1951, a Communist Party group meeting was held at defendant's home. Defendant stated the purpose of the meeting was to form a cell of the Communist Party at the Allen-Bradley plant. Defendant informed Ondrejka who had joined the Communist Party at the request of the F. B. I., that it was of the utmost importance that they both become stewards in the plant in order to make a more effective Communist Party cell. Both did become stewards but, for security reasons, defendant and Ondrejka avoided each other at the stewards' meetings.

During February, 1953, a Communist Party meeting was held in defendant's home. Also present were Jerry Rose and Ted Silverstein, the South Side Section Leader and Youth Coordinator, respectively, of the Communist Party in Milwaukee. Rose praised the work that defendant and Ondrejka had been doing for the Communist Party at the Allen-Bradley plant, and stated that the time had arrived to coordinate activities under a new Communist Party Club. Rose suggested defendant be made Chairman of the Club because it would be easier for Rose and defendant to meet and discuss agenda. At this same meeting Silverstein discussed plans for the formation of a Labor Youth League at the Allen-Bradley plant.

Later, another Communist Party meeting was held at defendant's home. Again Rose and Silverstein were present and urged the immediate establishment of a Labor Youth League at the Allen-Bradley plant. It was decided at the meeting that this should be done.

In April, 1953, a meeting was held at defendant's house to discuss mailing to certain individuals of a special May Day edition of the Daily Worker. At defendant's suggestion it was agreed to mail a copy to each of the stewards at Allen-Bradley. A week later, a fund-raising meeting of the Communist Party was held at defendant's home. The quota for the group was $100. Defendant pledged $35 upon behalf of himself and wife.

Defendant assigned himself as a member of the Legislative Committee of Local 1111, but vetoed Ondrejka's choice to be a member of the Welfare Committee. Defendant urged the importance of committee work in a Union, that by control of a Union's committee, the Party could control the Union without being officers of it. Defendant further explained how a single member of a committee could obtain control of that committee.

A meeting was held in defendant's home in May, 1953. Recruiting of members for the Communist Party was discussed. It was decided to send copies of the Daily Worker to "liberal" people at the Allen-Bradley plant. The names of those who appeared to be interested would be turned over to defendant and these would be considered fertile field from which the Communist Party could obtain future members.

Another meeting of the Allen-Bradley group was held in defendant's home in July, 1953. New security regulations were outlined. Members of the group were no longer to contact another member by telephone, the only contact to be through the Chairman. When calling the Chairman, the member was to keep on talking until the Chairman recognized his voice.

It is thus abundantly clear that the defendant was an enthusiastic and dedicated Communist both before and after December 9, 1952. There is nothing in the record to suggest that defendant had a change of heart before or after that date. About three months after December 9, 1952, defendant was the dominant figure in Communist group meetings which were held at his home. At the meeting held February 22, 1953, Jerry Rose, the South Side Section Leader of the Party stated " * * * During the course of the past the Communist Party was very well pleased with the credible job that John Killian * * * (and Ondrejka) had been doing for the Communist Party." Also, Ondrejka testified he had known defendant to be a party member from April, 1951 to August, 1953.

We hold there is substantial evidence in this record from which the jury could properly conclude that defendant was a member of the Communist Party on December 9, 1952. This would cover the alleged false statement contained in Count 1 of the Indictment. As the sentences imposed were to run concurrently, and the longer sentence was imposed on the first count, the judgment of conviction herein can be sustained if the conviction on Count 1 is upheld.

■ Defendant claims that proof as to the falsity of his affidavit does not meet the requirements of the two-witness rule in perjury cases. Weiler v. United States, 323 U.S. 606, 65 S.Ct. 548, 89 L.Ed. 495. This so-called "two-witness rule" in perjury cases is not a constitutional requirement, but a rule of the ancient common law. We hold the two-witness rule in perjury cases is not applicable to prosecutions under 18 U.S.C. § 1001. Two other Circuits have reached the same conclusion. Fisher v. United States of America, 9 Cir., 231 F.2d 99, 105; Gold v. United States of America, 99 U.S.App.D.C. 136, 237 F.2d 764, reversed on other grounds, 352 U.S. 985, 77 S.Ct. 378, 1 L.Ed.2d 360.

Defendant urges the trial court erred in refusing to order the production of F. B. I. reports by witnesses Ondrejka, Sullivan and Fensholt. We do not find in the record any request by defendant for the production of such reports by Ondrejka [4] and Sullivan. Having failed to make such demand defendant cannot make claim the Court erred in not requiring that they be produced.

As to Fensholt's reports, a large discretion must be allowed the trial judge with respect to the production of documents and in the absence of abuse, the exercise of that discretion will not be upset. Goldman v. United States, 316 U.S. 129, 132, 62 S.Ct. 993, 86 L.Ed. 1322; d'Aquino v. United States, 9 Cir., 192 F.2d 338, 375, certiorari denied 343 U.S. 935, 72 S.Ct. 772, 96 L.Ed. 1343; United States v. Lightfoot, 7 Cir., 228 F.2d 861 (pending on certiorari). The area of discretion is especially broad where (as here) the documents sought are "part of the Government's files." Goldman v. United States, 316 U.S. 129, 132, 62 S. Ct. 993, 995, 86 L.Ed. 1322.

Defendant claims error because of the receipt of certain testimony and also that the Court erred in its instructions. Defendant also advances other arguments by reason of which he claims the judgment below should be reversed. We have carefully considered each of these claims. It would unduly extend this opinion to say more than we have determined that such claims are without merit and cannot be sustained.

The judgment of conviction is
Affirmed.

### On Petition for Rehearing

■ It is ordered by the Court that rehearing be granted, and upon rehearing, ordered that upon the authority of Jencks v. United States, 77 S.Ct. 1007, the Judgment of the United States District Court for the Northern District of Illinois, Eastern Division, is reversed and the cause remanded to that Court for a new trial.

4. There was a request for production of Ondrejka's expense receipts.