**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**John Joseph KILLIAN, Defendant-**
**Appellant.**

**No. 12407.**

United States Court of Appeals
Seventh Circuit.

Jan. 11, 1960.

Rehearing Denied April 13, 1960.

David B. Rothstein Chicago, Ill., M. Michael Essin, Milwaukee, Wis., (Meyers & Rothstein Chicago, Ill., and Basil Pollitt, Brooklyn, N. Y., of counsel), for appellant.

Robert Tieken, U. S. Atty., James B. Parsons, Asst. U. S. Atty., Chicago, Ill., J. Walter Yeagley, Acting Asst. Atty. Gen., Jerome L. Avedon, Atty., Dept. of Justice, Washington, D. C. for appellee.

Before DUFFY and CASTLE, Circuit Judges, and MERCER, District Judge.

MERCER, District Judge.

This appeal is taken from a judgment entered upon a verdict finding the defendant guilty on each of two counts of an indictment charging him with having made false statements in an affidavit of non-Communist Union officer filed with the National Labor Relations Board, in violation of Title 18 U.S.C. § 1001.[1]

A prior judgment of his conviction of the same charge was first affirmed by us, United States v. Killian, 7 Cir., 246 F.2d 77, but, upon rehearing, on authority of Jencks v. United States 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103, we reversed the judgment because of the failure of the trial judge to require the government to produce for defendant's inspection statements made by certain government

[1]. Section 1001: "Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

witnesses to the Federal Bureau of Investigation, United States v. Killian, supra, 246 F.2d at page 82.

■ A second trial of the cause before a jury has resulted in a verdict and judgment of guilt on both counts. The latter judgment is now before us on review. Our task is largely simplified by reason of the fact of our prior opinion in this cause. While that fact does not lessen the burden of our duty to review the whole of the immediate record upon defendant's contention that the government has not sustained its burden of proof, we are convinced that several of defendant's contentions are controlled by our prior decision. We have reviewed the entire record and have compared the evidence adduced with our summary of relevant evidence in United States v. Killian, supra, 246 F.2d at pages 80–82. From that review and comparison we find that the relevant evidence adduced on the second trial is essentially a carbon copy of the evidence adduced at the defendant's first trial. We therefore conclude that we can, and must, follow our prior adjudication that the evidence was sufficient to support the jury's finding of the existence of every element necessary to proof of the crime charged. Accordingly, we adopt and follow our prior decision in the above respect and limit this opinion to a brief summary of the evidence tending to prove defendant's guilt as found by the jury.

On, prior to and after December 9, 1952 and December 11, 1952, defendant was an employee of the Allen-Bradley Company of Milwaukee, Wisconsin, and a member of Local 1111, United Electrical Radio and Machine Workers of America. From October 1952 to February 28, 1953, defendant served as an officer of Local 1111 by appointment for the unexpired term of an officer who was then being replaced. The president of the Local notified all officers of that Union to come to the Union Office on December 9, 1952 to execute non-Communist affidavits. Defendant and all other officers came to the office on that date and each executed the requisite affidavits (NLRB Form No. 1081).[2] Defendant was given the affidavit form bearing his name, told to read the document, and then to sign the same, listing his present address. After all affidavits had been signed and notarized, they were mailed by the president or at his direction, to the National Labor Relations Board. Those affidavits were received by the Chicago Regional Office of the Labor Board on December 11, 1952. After receipt of the affidavit, the Chicago office notified Local 1111 that it had complied with Section 9(h) of the Taft Hartley Act. 29 U.S.C.A. § 159(h).[3]

We agree with our prior opinion, 246 F.2d at page 80, that the jury could find that defendant wilfully and knowingly caused the affidavit executed by him to be filed with the Labor Board. In addition to the facts to which we there alluded that defendant is well-educated, that he knew the purpose of the special meeting of union officers called for December 9, 1952 and that defendant is presumed to have read what he signed, we add, only that defendant had been active in the labor movement and in the Communist

2. For text of pertinent parts of affidavit, see 246 F.2d at pages 79 and 80.

3. Section 9(h). "No investigation shall be made by the Board of any question affecting commerce concerning the representation of employees, raised by a labor organization under subsection (c) of this section, and no complaint shall be issued pursuant to a charge made by a labor organization under subsection (b) of section 160 of this title, unless there is on file with the Board an affidavit executed contemporaneously or within the preceding twelve-month period by each officer of such labor organization and the officers of any national or international labor organization of which it is an affiliate or constituent unit that he is not a member of the Communist Party or affiliated with such party, and that he does not believe in, and is not a member of or supports any organization that believes in or teaches, the overthrow of the United States Government by force or by any illegal or unconstitutional methods. The provisions of section 35A of the Criminal Code shall be applicable in respect to such affidavits."

Party for some years prior to the critical date and that he cannot be presumed to have been unaware of the purpose and necessity for the execution of such affidavits.

■ In disposing of the contention that the government failed to prove that defendant was a member of and affiliated with the Communist Party on December 11, 1952, we need do no more than refer to the able summary by Judge Duffy of the evidence relating to that issue, which evidence is, as we have observed, in all material respects identical to the evidence transcribed in the record before us. See 246 F.2d 80–82.

Out of deference to the earnestness of defendant's advancement of that contention now, however, we will briefly summarize a part of the revelation of the present record concerning defendant's Communist Party membership and activities. As early as the fall of 1949 defendant was a member of the Communist Party group on the campus of the University of Wisconsin and in the city of Madison, Wisconsin. Meetings of the Party group were held at relatively regular intervals at which meetings Party aims and objectives were discussed and planned. A number of these meetings were held in defendant's home. Witness Sullivan testified that in October 1949 he transferred his Communist Party membership from Cincinnati, Ohio, to Madison, Wisconsin. He first identified himself to the Wisconsin State Chairman of the Communist Party who advised Sullivan that someone in Madison would contact him. Defendant made that contact and identified himself to Sullivan as Section Organizer of the Party in Madison. Defendant handled the chore of assigning Sullivan and others to the Party group or cell with which they were to work. The testimony reveals a pattern of defendant's activity and leadership in Communist Party matters from late 1949 to the middle of November, 1951, when a Communist Party cell was formed to operate within the Allen-Bradley plant. Defendant suggested to the witness Ondrejka that both he and the defendant should become stewards of Local 1111 to enhance their op-

portunity for fostering Party aims within the Union. Both became stewards and participated in the stewards' meetings of the Local. In February 1953, defendant took an active part in the efforts of the Communist Party to establish a Labor Youth League Branch within the Allen-Bradley plant.

Ondrejka further testified that defendant discussed Party matters with him at the Allen-Bradley plant on several occasions in the fall of 1952, and that he, Ondrejka, personally knew defendant as a member of the Communist Party from the Spring of 1951 through August 1953. The record reveals a pattern of defendant's active participation in Communist Party meetings and affairs in, and subsequent to, the month of February, 1953.

There is substantial evidence from which the jury could find beyond all reasonable doubt that defendant was a member of the Communist Party when his non-Communist affidavit was signed and filed. To hold otherwise would deny all office to permissible inference and all value to circumstantial evidence as proof of state of mind on a particular day. The jury was certainly justified in inferring upon all of the evidence that defendant's membership and affiliation in and with the Party, which was so actively pursued for a long period of time to a time within a month or two of the date of December 11, 1952, and which was so actively continued beginning in February, 1953, was a continuing membership and affiliation which bridged the critical period without interruption. If that permissible inference is not enough to sustain the verdict the jury may have believed Ondrejka's testimony that he, personally, knew defendant to have been a member of the Communist Party from 1951 through August 1953. This conclusion is consistent with our prior decision which we consider to be controlling upon this question. United States v. Killian, supra.

We come now to the principal issues of this appeal which relate to defendant's requests for the production of documents for use in the cross-examination of government witnesses, Fensholt, Sullivan and Ondrejka, upon whose testimony

proof of defendant's Communist Party membership rests.

Witness Fensholt testified that he had joined the student group of the Communist Party in October 1949 when he was a student at the University of Wisconsin and that he had been an active member of the Party until August 1950, when he left the University; that he participated with defendant and others in Party meetings and activities during that period of time; and that subsequent to his leaving the University of Wisconsin he had related the facts of the Communist Party activities of himself, defendant and other members of the student group to an agent, or agents, of the FBI.

Sullivan and Ondrejka each testified that he had joined the Communist Party at the request of the FBI for the purpose of reporting to the FBI the identity and activities of Party members. Each testified that he had been paid by the FBI for his services. Each testified that he had made reports to the FBI during the period of his Party membership.

Each of the three witnesses had also testified before the grand jury which had found the indictment against defendant.

We have before us three principal issues, or three prongs of the same principal issue relating to the court's rulings on defendant's demand for production. As to each of the three witnesses defendant demanded that all statements made by him to the FBI and the transcript of his testimony before the grand jury be produced by the government and delivered to defendant for his use in cross-examination of the respective witnesses. In addition, Sullivan and Ondrejka each testified on cross-examination that he had received compensation for services and reimbursement of expenses by cash disbursement from the FBI, from time to time. At the close of his cross-examination of Ondrejka, defendant demanded that all receipts for such cash payments be produced for his use in further cross-examination of the witness. No demand was made for the Sullivan receipts.

In each instance the court denied the motions for production of the grand jury transcripts. Defendant's demand for production of the receipts signed by Ondrejka was also denied. Upon the basis of his interpretation of Title 18 U.S.C.A. § 3500,[4] the court entered an

4. Section 3500: "(a) In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) to an agent of the Government shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

"(b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

"(c) If the United States claims that any statement ordered to be produced under this section contains matter which does not relate to the subject matter of the testimony of the witness, the court shall order the United States to deliver such statement for the inspection of the court in camera. Upon such delivery the court shall excise the portions of such statement which do not relate to the subject matter of the testimony of the witness. With such material excised, the court shall then direct delivery of such statement to the defendant for his use. If, pursuant to such procedure, any portion of such statement is withheld from the defendant and the defendant objects to such withholding and the trial is continued to an adjudication of the guilt of the defendant, the entire text of such statement shall be preserved by the United States and, in the event the defendant appeals, shall be made available to the appellate court for the purpose of determining the correctness of the ruling of the trial judge. Whenever any statement is delivered to a defendant pursuant to this section, the court in its discretion, upon application of said defendant, may

order requiring the government to produce and deliver to defendant all statements to the FBI which related to the subject matter of each of the witnesses' direct testimony. With respect to all statements, or parts thereof, which the government contended did not relate to a witness' direct testimony, the court further ordered that such statements be delivered to the court for an *in camera* determination whether the same ought to be delivered to defendant for his inspection and use.

The decisive principles to be applied in the determination of the correctness of the trial court's rulings differ as between each of the statements to the FBI, the receipts, and the grand jury transcripts. We accordingly consider each of those questions separately and in the order listed above.

▉ Defendant's demand for the FBI statements and reports was prefaced upon authority of the decision in Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103. Thus, when defendant's demand for production was made during the course of the cross-examination of Fensholt and at the close of the direct examination of Sullivan and Ondrejka, defendant contended that he had an absolute right to have access to all statements and reports to the FBI made by the witness on the stand for such use as defendant might make of them on cross-examination. In taking that position, counsel for defendant admitted that the scope of his demand exceeded that

provided by the so-called Jencks Act, 18 U.S.C.A. § 3500.

The court construed Section 3500 as superseding the Jencks decision and ordered production of all statements and reports which related to the direct testimony of each witness for *in camera* inspection by the court. Such statements were then examined by the court and all matters were excised which the court determined to be not related to the direct testimony of the witness who had made the statement. The statements, as excised, were then delivered to defendant for his inspection and use. After the excision was completed the court impounded the statements, both the originals and a copy as excised, so that the same might be submitted to this court for its inspection.

Subsequent to trial of the case below and while the present appeal was pending the Supreme Court granted certiorari, 358 U.S. 905, 79 S.Ct. 236, 3 L.Ed.2d 227 to review United States v. Palermo, 2 Cir., 258 F.2d 397, and United States v. Rosenberg, 3 Cir., 257 F.2d 760, 762. We deferred consideration of the case until a decision had been made and rendered by the Supreme Court in the above cases. Those cases were decided June 22, 1959. Palermo v. United States, 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1237; Rosenberg v. United States, 360 U.S. 367, 79 S. Ct. 1231, 3 L.Ed.2d 1304; See also, United States v. Lev, 2 Cir., 258 F.2d 9, affirmed per curiam, 360 U.S. 470, 79 S.Ct. 1431, 3 L.Ed.2d 1531.

recess proceedings in the trial for such time as it may determine to be reasonably required for the examination of such statement by said defendant and his preparation for its use in the trial.

"(d) If the United States elects not to comply with an order of the court under pargraph (b) or (c) hereof to deliver to the defendant any such statement, or such portion thereof as the court may direct, the court shall strike from the record the testimony of the witness and the trial shall proceed unless the court in its discretion shall determine that the interests of justice require that a mistrial be declared.

"(e) The term 'statement', as used in subsections (b), (c), and (d) of this section in relation to any witness called by the United States, means—

"(1) a written statement made by said witness and signed or otherwise adopted or approved by him; or

"(2) a stenographic, mechanical, electrical, or other recording, or transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness to an agent of the Government and recorded contemporaneously with the making of such oral statement."

As a result of the Palermo and Rosenberg opinions defendant's position is somewhat altered, with his position now narrowed to the contention that the rulings of the trial court deprived defendant of rights accorded to him by Section 3500 as interpreted by the Supreme Court.

■■ We have examined the record with care and conclude that defendant's contentions are without merit. Section 3500, not the Jencks decision, now controls the requirement and procedures for the government's production of the FBI reports and statements for a defendant's inspection in a Criminal case. Palermo v. United States, 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287; Rosenberg v. United States, 360 U.S. 367, 369, 79 S.Ct. 1231, 3 L.Ed.2d 1304. Statements of a witness for the government "made to an agent of the Government which cannot be produced under the terms of 18 U.S.C. § 3500, 18 U.S.C.A. § 3500, cannot be produced at all." Palermo v. United States, supra, 360 U.S. at page 351, 79 S. Ct. at page 1224. When prior statements of the witness are demanded, the government "will not produce documents clearly beyond the reach of the statute," and "when it is doubtful whether the production of a particular statement is compelled by the statute" such statements must be submitted "to the trial judge for an *in camera* determination." Ibid, 360 U.S. at page 354, 79 S.Ct. at page 1225. Section 3500 limits "defense access to government papers" and is "designed to deny such access to those statements" which "do not relate to the subject matter of the witness' testimony." Id.

The procedure adopted by the trial court in the instant case could hardly be more faithful to that required by Palermo had the trial judge, through prescience and psychic perception, been able to foresee the result of that decision. In the face of the trial court's compliance with standards established by that controlling decision, each of defendant's contentions against the adopted procedure must be rejected. We are faced with no question as to producibility of the statements involved—each satisfies the statutory criteria of being a statement signed or adopted by the witness, or a "substantially verbatim recital" of an oral statement of the witness and contemporaneously made. The questions before us are concerned with the relationship of the statements to the testimony of the witnesses.

■ Here, the court restricted production to statements relating to the direct testimony of each of the witnesses. Those rulings were proper and the only rulings permitted by the statute. The statute provides that no statement made by the government witness "shall be the subject of subpoena, discovery, or inspection until said witness had testified on *direct examination* in the trial of the case." Subsection (a). After a government witness "has testified on *direct examination*" on a defendant's motion, the court shall "order the United States to produce any statement of the witness in the possession of the United States *which relates to the subject matter as to which the witness has testified.*" Subsection (b). (Emphasis supplied.) The meaning of the statutory language is clear. Congress intended that a defendant be not denied the opportunity to discredit the testimony of a government witness, and to that end has directed that statements given to the government by the witness must be made available to the defendant after the witness has testified on "direct examination," but only to the extent that such statements relate to the subject matter "as to which the witness has testified." Clearly, the intent is that such statements be used for impeachment purposes, and impeachment purposes only. As the court said in Palermo, supra, 360 U.S. at page 349, 79 S.Ct. at page 1223, Subsection (a) of the statute "manifests the general statutory aim to restrict the use of such statements to impeachment." The orders restricting production of statements to those relating to the direct testimony of the witness afforded to defendant his full measure of Section 3500 safeguards.

Defendant's second principal contention is, we believe, governed also by the Palermo opinion. Thus, defendant contends that the procedure adopted by the trial court permits the government in the first instance to make the determination as to what statements will be produced at all. The statute itself merely provides that the court shall order the production of any statements in possession of the United States which meet the statutory criteria. No protective procedure is established whereby a defendant or the court may determine what statements may exist, except the implied protection of the integrity of government counsel and agents. We do not find this deficiency, if any, shocking. Historically, in the course of litigation both criminal and civil, much of the judicial machinery for discovery and inspection is geared to the personal and professional integrity of the bar. If for any reason there appears to be any doubt that materials which ought to have been produced under Section 3500 may have been withheld, the trial judge has the power to investigate any breakdown or failure of integrity. Cf. Palermo v. United States, supra, 360 U.S. at page 355, 79 S.Ct. at page 1226. The court in Palermo was concerned with the question whether demanded documents were "statements" within the definition established by Subsection (e) of the statute, and not with the question here treated. We think, however, the standard established by that opinion is equally applicable to the question with which we are here concerned. In pertinent part, the court said:

"The statute itself provides no procedure for making a determination whether a particular statement comes within the terms of (e) and thus may be produced if related to the subject matter of the witness' testimony. Ordinarily the defense demand will be only for those statements which satisfy the statutory limitations. Thus the Government will not produce documents clearly beyond the reach of the statute for to do so would not be responsive to the order of the court. However, when it is doubtful whether the production of a particular statement is compelled by the statute, we approve the practice of having the Government submit the statement to the trial judge for an *in camera* determination. * * *

"It is also the function of the trial judge to decide, in light of the circumstances of each case, what, if any, evidence extrinsic to the statement itself may or must be offered to prove the nature of the statement. In most cases the answer will be plain from the statement itself. In others further information might be deemed relevant to assist the court's determination. This is a problem of the sound and fair administration of a criminal prosecution and its solution must be guided by the need * * * to avoid needless trial of collateral * * * issues while assuring the utmost fairness to a criminal defendant." Palermo v. United States, 360 U.S. at pages 354–355, 79 S.Ct. at pages 1225, 1226.

Here the government produced for the court's inspection a number of statements of each of the witnesses which related to his direct testimony even though that relationship was in many instances remote. Absent some indication that the government was remiss in this regard, and none appears of record, we think both the letter and the spirit of the statute are satisfied. Furthermore, defendant made no demand that the court interrogate the witnesses *in camera* or make other investigation as to whether all producible statements had been produced. On the contrary, defendant's demands were prefaced upon his asserted right to examine all reports, statements, and papers related to each witness without excision so that he might determine whether the same were useful to him. No such right exists. Section 3500 is designed to limit defense access to government papers and "it would indeed defeat this design to hold that the defense may see statements

in order to argue whether it should be allowed to see them." Palermo v. United States, supra, 360 U.S. at page 354, 79 S.Ct. at page 1226.

Throughout the trial, defendant's demands for production were based upon the same broad contention that he was entitled to a carte blanche production of all statements to the FBI made by a particular witness. That position was grounded upon the defendant's reliance on the Jencks case as establishing a rule of constitutional law. It is now clear, however, that the Jencks case prescribed only a rule of criminal procedure for federal courts which has now been superseded by enactment of Section 3500, Palermo v. United States, supra, 360 U.S. at pages 345, 347, 348, 79 S.Ct. at pages 1221, 1222, and that no constitutional questions are involved. Palermo v. United States, supra, 360 U.S. at page 353, note 11, 79 S.Ct. at page 1225.

Defendant's arguments against the procedure here employed ignore the weight of competing interests which the statute seeks to reconcile. On the one hand, scrupulous fairness to a defendant in the administration of criminal justice is a matter of vital national concern. On the other hand, the security of the nation, which includes the inviolability of its investigative processes, is a legitimate interest of equal vitality.

The statute deals with this area in which these two competing interests collide by devising a compromise. Both the inviolability of statements to the FBI, desired by the national security interest, and the carte blanche inspection of such statements desired by defendants are required to give and take. On the one hand the government must produce all statements of its witnesses which fall within the statutory definition. On the other, a defendant has a right to demand statements only within the limitations fixed by the statute and is denied a litigant's usual participation in the determination as to what statements must be produced. The rights of a defendant are protected by the supervisory hand of the trial court,

acting *in camera,* and by the right to submit his cause to an appropriate court for appellate review.

Inevitably, in a compromise imposed by statute there is some unhappiness on the part of each party. The test of propriety of the court's rulings, however, is whether or not the court has followed the statute and has accorded to a defendant the rights to which he is entitled.

We have reviewed the original statements produced by the government for inspection by the court and as delivered to defendant after excision by the court. It appears that the government produced even statements having a remote relationship to the direct testimony of the witnesses. It also appears that the excisory hand of the court was liberally applied in favor of defendant and against the government. The procedure employed by the court was scrupulously fair. We therefore reject defendant's contentions against the rulings relative to production of statements given to the FBI.

■ The next contention of defendant is that the court should have ordered production of receipts given by Ondrejka to the FBI for salary payments and reimbursement of expenses. In the case of Sullivan, no request was made by the defendant for production of such documents and defendant cannot now complain that production was not ordered.

On cross-examination, Ondrejka testified that he had been paid $25.00 per month by the FBI from the time he joined the Communist Party until November 1949 and that his compensation was increased on the latter date to $50.00 per month. In addition, Ondrejka testified that he was reimbursed for all expenses incurred in conjunction with his FBI work. The witness further testified that he would, periodically, give an oral report of expenditures to an FBI agent and the agent would reimburse the witness at a later date. The court sustained an objection to the question whether the witness was required to sign receipts for reimbursements.

After cross-examination was completed, defendant moved to require the production for his inspection of all receipts signed by the witness. The government objected to the motion as one having no basis in statutory law or judicial opinion, but offered to furnish to defendant a schedule of payments for expenses and services which would show dates and amounts of payment. The defense refused to accept the tendered schedule and elected to stand on its motion, whereupon the court denied the motion for production.

We are convinced the court's ruling was proper under the circumstances of this case. The purpose of requiring the production of statements under Sec. 3500 is restricted to their use for impeachment of the witness. Palermo v. United States, 360 U.S. 343, 349, 79 S.Ct. 1217, 3 L.Ed. 2d 1287. It is not conceived how defendant could have been placed in a better position by production of these receipts which would have shown only what the testimony had already revealed, namely, that the witness had operated as a paid FBI informant. In a broad sense, a receipt signed by a witness might be characterized as a statement given to the government within the statutory definition. We believe, however, that the demand for production of receipts is a matter within the sound discretion of the trial judge in his conduct of criminal trials. We do not believe the statute requires the court to explore every time-consuming, collateral alley which the defense can devise in a particular case and which bears no direct relationship to the witness' direct testimony. We think this is especially true, where, as here, the information contained in the receipts is established on cross-examination and the government has offered to supply the defendant, without objection and without delay, with a schedule of all information which the requested documents contained.

Fisher v. United States, 9 Cir., 231 F. 2d 99, upon which defendant relies, is factually inapposite to the instant case. In that case, two government witnesses were shown to have received in excess of $10,000.00 over a nine year period. One of the witnesses testified that he had received no compensation for his services as an FBI informer, but only reimbursement for his expenses. Under those circumstances, the court held that the failure to produce receipts was error because it related to the question whether the witness had been paid for his services. Here there is no attempt to conceal the witness' identity as a paid government informant.

■ Finally, on this phase of the case, we need to consider defendant's arguments that the court erred in refusing his request to inspect the transcripts of the grand jury testimony of the witnesses Fensholt, Sullivan and Ondrejka. In each instance, defendant contended, by analogy to the Jencks decision, that he had an absolute right to examine the grand jury transcript without the necessity for any foundation for such examination.

Defendant's reliance on the Jencks-decision analogy is misplaced. Neither the Jencks decision nor Section 3500 controls the production of grand jury testimony. Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 398, 79 S.Ct. 1237, 3 L.Ed.2d 1323.

The Pittsburgh decision is squarely in point on this issue of the instant case. The defendants in Pittsburgh were convicted upon an indictment charging a conspiracy under Section 1 of the Sherman Act, 15 U.S.C.A. § 1. One Jonas, called as a witness by the government, testified that he had been contacted by representatives of some of the defendants by phone and, later, had met with them and had discussed and reached an agreement on prices.

At the conclusion of Jonas' testimony, defense counsel established that Jonas had testified before the grand jury three times on "the same general subject matter." Counsel then moved for the delivery to defendants of the minutes of his testimony before the grand jury. Counsel contended that the defendants had a right to inspect the grand jury transcript which related to the same general sub-

ject matter of the witness' direct testimony.[5]

■ In rejecting that contention the court held that the production of grand jury testimony is governed by Fed.Rules Crim.Proc. rule 6(e), 18 U.S.C.A. which is declaratory of existing judicial precedents, Pittsburgh Plate Glass Co. v. United States, supra, 360 U.S. at pages 398–399, 79 S.Ct. at pages 1240, 1241, not by Section 3500 or the Jencks decision, Ibid., 360 U.S. at page 398, 79 S.Ct. at page 1240. The basic policy relating to grand jury testimony is " 'a long-established policy' of secrecy", Ibid., 360 U.S. at page 399, 79 S.Ct. at page 1241, which may be relaxed only as the ends of justice require disclosure. Ibid, 360 U.S. at page 400, 79 S.Ct. at page 1241; United States v. Socony Vacuum Oil Co., 310 U.S. 150, 234, 60 S.Ct. 811, 84 L.Ed. 1129; In re April 1956 Term Grand Jury, 7 Cir., 239 F.2d 263, 272. In a proper case, a court may order production of grand jury minutes for the use of the defense, United States v. Procter & Gamble, 356 U.S. 677, 683, 78 S.Ct. 983, 2 L.Ed.2d 1077, but "The burden, however, is on the defense to show that 'a particularized need' exists for the minutes which outweighs the policy of secrecy." Pittsburgh Plate Glass Co. v. United States, supra 360 U.S. at page 400, 79 S.Ct. at page 1241.

We have no showing here of "particularized need" for production, but only the broad claim of absolute right to access to the transcripts merely upon a showing that the witness has testified before the grand jury. The request for production was based upon a claimed right which does not exist. Denial of that request was not error.

We have reviewed the whole record in this case and find no merit in other contentions of error advanced by defendant. Particularized discussion of remaining questions would only further lengthen an overly-long opinion. We find no

error in the court's rulings upon admissibility of evidence or upon instructions. The court's charge to the jury was complete and accurate, and fair to both the defendant and the government. Finally, the error, if any, in the government's summation of the case is harmless error. We are not faced with a situation such as that in United States v. Spangelet, 2 Cir., 258 F.2d 338, in which counsel for the government made a direct reference to facts not supported by the evidence, and the court, in ruling upon an objection, gave to the jury the impression that defense counsel was being chastized.

The judgment is affirmed.

5. Here, the defendant's demand was even broader in scope. Thus, the defense asserted an unrestricted right to examine the transcript of each witness' grand jury testimony, without regard to its relationship to the subject matter of the witness' trial testimony.