## KILLIAN *v.* UNITED STATES.

No. 7.   Argued October 10, 1961.—Decided December 11, 1961.

232

*David B. Rothstein* and *Basil R. Pollitt* argued the cause for petitioner. With them on the brief was *M. Michael Essin.*

*Kevin T. Maroney* argued the cause for the United States. With him on the briefs were *Solicitor General Cox, Assistant Attorney General Yeagley, Bruce J. Terris, George B. Searls* and *Lee B. Anderson.*

*Telford Taylor* filed a brief for Raymond Dennis et al., as *amici curiae,* urging reversal.

MR. JUSTICE WHITTAKER delivered the opinion of the Court.

For the purpose of enabling a labor union of which he was then an officer to comply with § 9 (h) of the National Labor Relations Act, as amended, 29 U. S. C. § 159 (h), and hence to use the processes of the National Labor Relations Board,[1] petitioner made on December 9, and caused to be filed with the Board on December 11, 1952, an affidavit reciting, *inter alia,* "I am not a member of the Communist Party or affiliated with such Party." Upon receipt of that affidavit and like ones of all other officers of the union, the Board advised the union that it had complied with § 9 (h) and could make use of the Board's processes.

In November 1955, an indictment in two counts was returned against petitioner in the United States District Court for the Northern District of Illinois. The first

---

[1] Section 9 (h), 29 U. S. C. § 159 (h), provided in pertinent part that "No investigation shall be made by the Board of any question affecting commerce concerning the representation of employees, raised by a labor organization under subsection (c) of this section, and no complaint shall be issued pursuant to a charge made by a labor organization under subsection (b) of section 160 of this title, unless there is on file with the Board an affidavit executed contemporaneously or within the preceding twelve-month period by each officer of such labor organization . . . that he is not a member of the Communist Party or affiliated with such party . . . ." This section was repealed by Pub. L. 86–257, 86th Cong., 1st Sess., § 201 (d), 73 Stat. 519, 525.

count charged that, in violation of 18 U. S. C. § 1001,[2] petitioner had falsely sworn, in the affidavit, that he was not a member of the Communist Party, and the second charged that, in violation of the same statute, he had also falsely sworn in that affidavit that he was not affiliated with the Communist Party. A jury trial was had which resulted in a verdict of guilty on both counts, and the court sentenced petitioner to imprisonment. On appeal, the United States Court of Appeals for the Seventh Circuit originally affirmed, but, before the motion for rehearing was ruled, this Court's decision in *Jencks* v. *United States,* 353 U. S. 657, came down, and, on the authority of that case, the court granted the motion for rehearing, reversed the judgment and remanded the case for a new trial. *United States* v. *Killian,* 246 F. 2d 77, 82. A new trial was had. It also resulted in a verdict of guilty on both counts, and petitioner was sentenced to imprisonment for five years on Count I, and for three years on Count II, the sentences to run concurrently. On appeal, the United States Court of Appeals for the Seventh Circuit affirmed, *United States* v. *Killian,* 275 F. 2d 561, and we granted certiorari limited to two questions, namely, (1) whether production of statements submitted by Government informer witnesses for their expenses, and the receipts executed by them for the payments, is required by 18 U. S. C. § 3500 when the Government offers at the trial to produce a list of the dates and amounts of the

---

[2] 18 U. S. C. § 1001 provides:

"Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

payments, and (2) whether the instructions to the jury properly defined membership in and affiliation with the Communist Party. 365 U. S. 810.

The Government introduced evidence tending to show that petitioner was a member and active in the affairs of the Communist Party from 1949 through August 1953, but, inasmuch as there is not before us any question concerning the sufficiency of the evidence to make a submissible case for the jury, it is not necessary to review the evidence in detail.

## I. THE DOCUMENT PRODUCTION QUESTIONS.

Intelligent understanding of the document production questions presented requires a brief statement of their basis. They arose in connection with the testimony of Government witnesses Sullivan and Ondrejka.

On direct examination, Sullivan testified that he joined the Communist Party in 1948 at the request of the Federal Bureau of Investigation, and in October 1949 transferred his membership from Cincinnati, Ohio, to Madison, Wisconsin, where, by secret means, he made contact with local leaders of the Communist Party and became active in its affairs. In those activities, he met petitioner in December 1949. Petitioner was then the section organizer for the Party in Madison. Thereafter, Sullivan attended a number of secret Communist Party group meetings in Madison in 1949 and 1950 at which petitioner was present and acted as the spokesman and leader. Sullivan testified that he gave written reports to the F. B. I. respecting Party meetings and activities soon after they occurred.

At the close of Sullivan's direct testimony, petitioner moved for production, for use in cross-examination, of all statements given by the witness to the F. B. I. relating to his direct testimony. The narrative statements were produced to the judge, *in camera*, who, after excising the

parts that did not relate to the witness' direct testimony, handed them to petitioner's counsel. On cross-examination, Sullivan testified that he was paid stipulated monthly amounts for his services, and was reimbursed for his expenses incurred in Communist Party activities, by the F. B. I., and that when he received the money he signed a receipt for it. His connection with the F. B. I. terminated in 1952.

After completing the cross-examination of the witness, petitioner again moved for production of all statements made by the witness to the F. B. I., without excision. The Government objected to the motion on the grounds that it had produced all of the witness' statements that related to his direct testimony, and that there was no showing that the witness had given any other statements to the Government that related to his direct testimony. Thereupon, the court denied petitioner's motion. Petitioner then moved to strike the testimony of the witness, and that motion, too, was denied.

On direct examination, Ondrejka testified that he joined the Communist Party at the request of the F. B. I. in October 1949 and remained a member of the Party until November 1953. He met petitioner at a Communist Party meeting in Milwaukee, Wisconsin, in January 1951, and thereafter attended many secret Communist Party meetings in Milwaukee where petitioner was present and active, and also participated with petitioner in numerous Party activities, until August 1953, and knew petitioner to be a member of the Communist Party throughout that period. Ondrejka testified that he gave written reports to the F. B. I. respecting Party meetings and activities soon after they occurred.

At the conclusion of Ondrejka's direct testimony, petitioner moved for production, for use in cross-examination, of all statements given by the witness to the F. B. I. The court ordered the Government to produce to the judge,

*in camera,* "all statements that in any way affect the direct examination of the witness." Accordingly, all of the narrative statements given by the witness to the Government relating to his direct testimony were produced to the judge, who, after excising such parts as did not relate to the witness' direct testimony, delivered them to petitioner's counsel. Petitioner then moved for production of all statements relating to the testimony of the witness, without excision. That motion was denied.

On cross-examination, Ondrejka testified that he was paid stipulated monthly amounts in cash for his services by the F. B. I., and, in addition, was reimbursed by the F. B. I. for his expenses, such as Communist Party dues, literature, contributions and travel, which he orally reported to an F. B. I. agent, who made notes thereof and later reimbursed him in cash. The court sustained the Government's objection to a question asking whether Ondrejka signed receipts for the moneys paid to him in reimbursement for his expenses.

Petitioner then moved for production of all statements given by the witness to the F. B. I., whether written by the witness or by an F. B. I. agent as the result of interviews with the witness, which related to the witness' testimony on cross-examination, including particularly reports by the witness of his reimbursable expenses and the receipts which he signed evidencing reimbursement for those expenses. The Government opposed production of the documents on the ground that they did not relate to the direct testimony of the witness. It further objected to producing Ondrejka's reports of expenses, and the receipts he had signed when reimbursed for those expenses, on the grounds that they were administrative records of the F. B. I. and were immaterial and irrelevant, but the Government offered to produce a list showing the dates and amounts of the payments and whether they were for services or expenses. Petitioner refused to

receive that proffered list. Thereupon, the court denied the motion. Petitioner then moved to strike all of Ondrejka's testimony, and that motion, too, was denied.

Petitioner contends that his general demands for "all statements," as well as his specific demand for the reports and receipts made by Ondrejka, encompassed, and the trial court erred to his prejudice in denying his motion to require the Government to produce, (1) the notes made by the F. B. I. agents covering Ondrejka's oral reports of expenses and (2) the receipts signed by Sullivan and Ondrejka for moneys paid to them in reimbursement for expenses. He supports these contentions with an elaborate argument which we need not delineate because the Solicitor General now concedes that the F. B. I. notes of Ondrejka's oral reports may have been "statements" within the meaning of 18 U. S. C. § 3500 (e)(2),[3] and he flatly concedes that the receipts signed by Sullivan and Ondrejka were "statements" within the meaning of § 3500.

However, the Solicitor General contends that on the actual facts—many of which are not incorporated in the record before us—petitioner is not entitled to, and that we should not on this incomplete and imperfect record order, a new trial, because the true facts are that the F. B. I. agents' notes covering Ondrejka's oral reports of expenses were not in existence at the time of the trial, and the receipts signed by Sullivan and Ondrejka do not "relate to" their direct testimony as required by § 3500, or, if it may be said that any of them do "relate to" their direct testimony, that the same information, in much

---

[3] The Solicitor General concedes that the F. B. I. notes of Ondrejka's oral reports may have come within the meaning of "statement" as defined by 18 U. S. C. § 3500 (e)(2), namely, "a stenographic . . . recording . . . which is a substantially verbatim recital of an oral statement made by said witness to an agent of the Government and recorded contemporaneously with the making of such oral statement."

greater detail, was given to petitioner in the witnesses' narrative statements that were produced and delivered to his counsel at the trial, and hence if there was any error it was harmless.

More specifically, the Solicitor General tells us in his brief that, although the nature of the Government's objections in the courts below implied that the agents' notes were in existence, his interrogation of the F. B. I. agents has disclosed that, after they incorporated the data contained in their notes of Ondrejka's oral reports into the receipts to be signed by him, the agents destroyed the notes in accord with their normal practice, and hence those notes were not in existence at the time of either of petitioner's trials. Although the receipts are not contained in the record before us, the Solicitor General says that there are 124 of them and that a careful examination of them reveals that none of Sullivan's receipts contains any itemization whatever of the nature of the reimbursed expenses, and thus they do not "relate to" anything mentioned in his direct testimony. With respect to Ondrejka's receipts, the Solicitor General says that, although the Government inadvertently represented to the District Court and the Court of Appeals that the list, proffered to petitioner at the trial and showing the dates and amounts of payments made to Ondrejka, gave all of the information that was contained in the receipts, his examination has disclosed that nine of Ondrejka's receipts do contain some itemization of the nature of his reimbursed expenses, but that only two of the nine can be said to "relate to" anything mentioned by Ondrejka on his direct examination, and that the same information, in greater detail, was contained in Ondrejka's narrative statements that were produced and delivered to petitioner's counsel at the trial. .

For these reasons, the Solicitor General contends that, viewed upon the now known and readily available actual

facts, no error, at least no prejudicial error, resulted from the nonproduction of the F. B. I. notes and the Sullivan and Ondrejka receipts at the trial. However, the Solicitor General recognizes that petitioner is not bound to accept his statement that the F. B. I. notes of Ondrejka's oral reports of expenses were destroyed in accord with normal practice long prior to the trial, and that petitioner is entitled to an opportunity to examine the F. B. I. agents and other responsible Government officials on these matters which, of course, can be done only in the District Court. He recognizes, too, that his contentions with respect to the receipts signed by Sullivan and Ondrejka necessarily involve a detailed examination and comparison of the lengthy direct testimony of Sullivan and Ondrejka, the 124 receipts, the list showing the dates and amounts of payments to Ondrejka that was proffered to petitioner by the Government at the trial, and the numerous narrative statements by Sullivan and Ondrejka that were produced and delivered to petitioner at the trial, and he submits that this cannot appropriately be done in this Court, especially since neither the receipts nor the proffered list is contained in the present record, but can properly be done only in the District Court. He therefore asks us to vacate the judgment and remand the case to the District Court to hear these issues and to determine whether a new trial should be ordered or the judgment should be reinstated with the right in the petitioner, of course, to appeal from any such judgment to the Court of Appeals.

In opposition, petitioner argues that the claimed destruction of the agents' notes admits the destruction of evidence that may have been helpful to him and deprives him of his rights under § 3500 and to due process of law, and therefore the judgment should be reversed. Alternatively, he argues that only he and his counsel could determine the uses that might have been made of

the receipts had they been produced, and he concludes that it would not be possible for the District Court, on remand, to find that the failure to produce the receipts was nonprejudicial or harmless error, and that therefore he is entitled to a new trial.

As to petitioner's contention that the claimed destruction of the agents' notes admits the destruction of evidence, deprives him of legal rights and requires reversal of the judgment, it seems appropriate to observe that almost everything is evidence of something, but that does not mean that nothing can ever safely be destroyed. If the agents' notes of Ondrejka's oral reports of expenses were made only for the purpose of transferring the data thereon to the receipts to be signed by Ondrejka, and if, after having served that purpose, they were destroyed by the agents in good faith and in accord with their normal practice, it would be clear that their destruction did not constitute an impermissible destruction of evidence nor deprive petitioner of any right. Those are the factual representations made by the Solicitor General. Whether they are true can be determined only upon a hearing in the District Court.

It is entirely clear that petitioner would not be entitled to a new trial because of the nonproduction of the agents' notes if those notes were so destroyed and not in existence at the time of the trial. It is equally clear that, notwithstanding the fact that the Sullivan and Ondrejka receipts were "statements" within the meaning of § 3500 and were demanded under that section, petitioner would not be entitled to a new trial because of the nonproduction of those receipts if in truth they do not relate to the direct testimony of those witnesses inasmuch as § 3500 (c) requires "the court [to] excise the portions of [the] statement which do not relate to the subject matter of the testimony of the witness." The Solicitor General represents that 115 of the 124 receipts signed by Sullivan and

Ondrejka do not contain any itemization of the nature of the reimbursed expenses nor relate to the direct testimony of those witnesses. If those representations are true, petitioner would not be entitled to a new trial because of the nonproduction of those 115 receipts. Inasmuch as the receipts are not contained in the record before us, whether the Solicitor General's representations are true can be determined only upon a hearing in the District Court.

But the Solicitor General finds that two of Ondrejka's receipts may be said to relate to Ondrejka's direct testimony. However, he says that the same information as they contain and much more on the same subjects was contained in Ondrejka's narrative statements that were produced and delivered to petitioner at the trial, and therefore petitioner could not have been prejudiced by the nonproduction of those two receipts and is not entitled to a new trial on that account. It is true, as petitioner argues, that only the defense is in position to determine the precise uses that may be made of demanded documents, *Jencks* v. *United States,* 353 U. S. 657, 668, but that is not to say that the harmless error rule is never applicable in respect to the nonproduction of demanded documents. Upon very similar facts, we recently approved a holding that nonproduction of demanded documents was harmless error. *Rosenberg* v. *United States,* 360 U. S. 367. We there said: "Since the same information that would have been afforded had the document been given to defendant was already in the possession of the defense by way of the witness' admissions while testifying, it would deny reason to entertain the belief that defendant could have been prejudiced by not having had opportunity to inspect the letter." 360 U. S., at 371.

While, as we said in the *Rosenberg* case, *supra,* a "court should not confidently guess what defendant's attorney

might have found useful for impeachment purposes in withheld documents to which the defense is entitled . . . , when the very same information was possessed by defendant's counsel as would have been available were error not committed [a court properly can find that] it would offend common sense and the fair administration of justice to order a new trial." 360 U. S., at 371.

If it is true, as the Solicitor General represents, that the information contained on the two Ondrejka receipts had already been given to petitioner in Ondrejka's narrative statements covering the same subjects, it is clear that the District Court properly could find that the error in failing to produce those two receipts was harmless.

Accordingly, we vacate the judgment and remand the cause to the District Court for a hearing confined to the issues raised by the Solicitor General's representations as stated in this opinion. The District Court shall make findings of fact on those issues. If the District Court finds that the Solicitor General's representations are true in all material respects, it shall enter a new final judgment based upon the record as supplemented by its findings, thereby preserving to petitioner the right to appeal to the Court of Appeals. If, on the other hand, the District Court finds that the Solicitor General's representations are untrue in any material respect, it shall grant petitioner a new trial.

## II. The Instructions to the Jury.

Whether the District Court, on remand, grants or denies a new trial, it is obvious that petitioner's contentions respecting the court's instructions to the jury will not be mooted [4] and it seems necessary to decide them.

---

[4] These instruction questions are not likely to be mooted on remand, because if a new trial is granted it is probable, since the Court of Appeals has already approved them, the District Court would give

Because of the nature of some of petitioner's contentions respecting the instructions, it seems appropriate to make clear just what was the charge upon which petitioner was convicted. He was not charged with criminality for being a member of or affiliated with the Communist Party, nor for participation in any criminal activities of or for the Communist Party. He was not charged with advocating or teaching the overthrow of the Government as was the case in *Yates* v. *United States,* 354 U. S. 298, or with knowing membership in an organization advocating the overthrow of the Government by force and violence as in *Scales* v. *United States,* 367 U. S. 203, and *Noto* v. *United States,* 367 U. S. 290. The charge was that, to enable a labor union of which he was an officer to comply with § 9 (h) of the National Labor Relations Act and thus be permitted to use the processes of the Labor Board, petitioner, on December 11, 1952, knowingly made and caused to be transmitted to the Labor Board a false affidavit, saying he was not then a member of or affiliated with the Communist Party when in fact he was both a member of and affiliated with the Communist Party, and that those acts were made criminal and punishable by 18 U. S. C. § 1001.

Nothing in § 9 (h) or elsewhere in the National Labor Relations Act makes or purports to make criminal either membership in or affiliation with the Communist Party, *American Communications Assn.* v. *Douds,* 339 U. S. 382, 402, but § 1001 provides that "Whoever, in any matter within the jurisdiction of any department or

---

the same or similar instructions to the jury on the new trial, and, if petitioner should be convicted, the same question would likely be brought here again. If we then disapproved the instructions, a fourth trial would be necessary. If, on the other hand, the District Court denies a new trial and enters a new judgment, it is likely that the Court of Appeals would again approve these instructions and that the same questions would be brought here again.

agency of the United States knowingly and willfully falsifies . . . a material fact . . . or makes or uses any false writing or document knowing the same to contain any false . . . statement . . . shall be fined not more than $10,000 or imprisoned not more than five years, or both." Petitioner was charged with and convicted for violating that statute—of knowingly making and transmitting to the Labor Board on December 11, 1952, an affidavit falsely swearing that he was not a member of or affiliated with the Communist Party—not for being a member of or affiliated with the Communist Party, nor for participating in any activities, lawful or unlawful, of the Communist Party, although, of course, determination of whether the affidavit was true or false requires a determination of whether petitioner was a member of or affiliated with the Communist Party on December 11, 1952. Neither is there any question here about the fact that the evidence was sufficient to make a submissible case for the jury and to support its verdict—notwithstanding petitioner's tangential implications to the contrary. The questions here are simply whether the court's instructions to the jury properly defined *membership* in and *affiliation* with the Communist Party.

*Membership.* Petitioner first contends that the instruction respecting membership [5] should have defined "mem-

---

[5] The instruction respecting membership was as follows:

"The crucial issue of fact in this case is whether on December 11, 1952, John Joseph Killian was or was not then a member of the Communist Party or affiliated with such Party.

"The affidavit does not call upon any person to state whether or not in the past he has ever been a member of the Communist Party or affiliated with it. A person who has been at some time in the past a member of the Communist Party or affiliated with that Party but who has terminated such membership or affiliation prior to the making of the affidavit would be entitled to sign the affidavit under oath without violating the law.

"Since the affidavit speaks in the present tense only, the fundamental issue of fact for you to decide is whether or not at the time

bership" as, and required a finding of, "a definite objective factual phenomenon" or a "specific formal act of joining" rather than, as was done, in the subjective terms of a state of mind.    If petitioner is right in this contention it would follow, despite the fact the question is foreclosed against him here, that the evidence did not make a submissible case for the jury on Count I of the indictment and his motion for a directed verdict of acquittal on that count should have been granted, for there was no evidence of "a definite objective factual phenomenon [of joining]" or of "a specific formal act of joining."    Indeed, the very nature of the case—claimed membership in an underground or secretly operating organization whose member-

alleged in the indictment the defendant knowingly and willfully used an affidavit which was false and which he knew to be false at that time.

"Whether or not the defendant was a member of the Communist party at the time alleged in the indictment is a question of fact which you are to determine from all of the evidence in the case.    In determining this question you must bear in mind that the burden of proof rests on the Government to prove the defendant guilty beyond a reasonable doubt.    Membership or lack of membership in the Communist Party may be established by direct as well as circumstantial evidence.

"Membership in the Communist Party, the same as membership in any other organization, constitutes the state of being one of those persons who belong to or comprise the Communist Party.    It connotes a status of mutuality between the individual and the organization.    That is to say, there must be present the desire on the part of the individual to belong to the Communist Party and a recognition by that Party that it considers him as a member.

"Intent is a state of mind and can only be determined by what an individual says and what he does.    In determining the issue as to whether the defendant was or was not a member of the Communist Party at the time alleged in the indictment you may take into consideration the acts and statements of this defendant, as disclosed by the evidence, bearing in mind that individual and unrelated isolated acts of the defendant showing cooperation with the Communist Party or isolated statements of the defendant showing sympathy with the

ship records, if any, are not available to the Government—precludes the possibility of such evidence, and, if the rule were as petitioner contends, false affidavits of non-Communist Party membership could be made and sub-

Communist Party are not in themselves conclusive evidence of membership but are circumstances which you may take into consideration along with all the other evidence in this case.

"In determining whether or not the defendant was a member of the Communist Party at the time alleged in the indictment you may take into consideration whether the defendant:

"1. Paid dues or made any financial contributions to the Communist Party or collected any funds on its behalf;

"2. Attended Communist Party meetings, classes, conferences, or any other type of Communist Party gathering;

"3. Had made himself subject to the discipline of the Communist Party in any form whatsoever;

"4. Participated in any recruiting activities on behalf of the Communist Party;

"5. Has executed orders, plans or directives of any kind of the Communist Party;

"6. Has acted as an agent, messenger, correspondent, organizer, or in any other capacity in behalf of the Communist Party;

"7. Has been accepted to his knowledge as an officer or member of the Communist Party, or as one to be called upon for services by other officers or members of the Communist Party;

"8. Has conferred with officers or other members of the Communist Party in behalf of any plan or enterprise of the Communist Party;

"9. Has spoken or in any other way communicated orders, directives or plans of the Communist Party;

"10. Has advised, counseled, or in any other way imparted information, suggestions, or recommendations, to officers or members of the Communist Party, or to anyone else, in behalf of the Communist Party;

"11. Has indicated by word, action, conduct, writing, or in any other way, a willingness to carry out in any manner and to any degree the plans, objectives or designs of the Communist Party;

"12. Has in any other way participated in the activities, planning or actions of the Communist Party;

"These are some of the indicia of Communist Party membership but you are not limited solely to those I have enumerated. As sole

mitted to the Labor Board with impunity. Membership in such a secretly operating organization is, to all but the organization and its member or members, necessarily subjective, and, although it must be proved by evidence of objective facts and circumstances having a rational tendency to show, and from which the jury may rationally and logically infer, the ultimate subjective fact of membership, it is, in the very nature of such a case, necessary that the court's instructions define membership in such an organization in subjective terms or not at all.

A similar question arising under § 9 (h) was presented in *Jencks* v. *United States*, 353 U. S. 657, but the Court's opinion, turning on the document production question, did not reach it. However, Mr. Justice Burton's separate concurring opinion, joined by MR. JUSTICE HARLAN, 353 U. S., at 672, and, on the question here considered, also by MR. JUSTICE FRANKFURTER, 353 U. S., at 672, did reach the question. It found the membership defining instruction given in that case to be deficient because it "failed to emphasize to the jury the essential element of membership in an organized group—the desire of an individual to belong to the organization and a recognition by the organization that it considers him as a member."

---

arbiters of the facts, it is your duty to consider all the evidence, either direct or circumstantial, which bears upon the question of whether or not the defendant was a member of the Communist Party on the date alleged in the indictment.

"In determining this question, you must bear in mind that the burden of proof rests upon the Government to prove the defendant guilty beyond a reasonable doubt. If you find that the Government has sustained this burden by proving beyond a reasonable doubt that the defendant was a member of the Communist Party on December 11, 1952, as alleged in the indictment, and if you find, also, that the Government has proved beyond a reasonable doubt the other essential elements of the offense charged in the first count of the indictment, as I have outlined them to you, then you must find the defendant guilty as to the first count."

353 U. S., at 679. In the instant case, the District Court's instruction to the jury defined membership to the jury in almost precisely that language (see note 5, sixth paragraph). Similar instructions in cases arising under § 9(h) have been held proper by every United States Court of Appeals that has passed upon the question. *Fisher* v. *United States,* 231 F. 2d 99, 107 (C. A. 9th Cir.); [6] *Lohman* v. *United States,* 251 F. 2d 951, 954 (C. A. 6th Cir.); [7] *Lohman* v. *United States,* 266 F. 2d 3 (C. A. 6th Cir.); [8] *Travis* v. *United States,* 269 F. 2d 928, 942–943 (C. A. 10th Cir.).[9] From these consistent holdings and

[6] In *Fisher* v. *United States, supra,* the Court of Appeals for the Ninth Circuit said: "Membership is composed of a desire on the part of the person in question to belong to an organization and acceptance by the organization. Moreover, certain actions are usually required such as paying dues, attending meetings and doing some of the work of the group." 231 F. 2d, at 107.

[7] In *Lohman* v. *United States, supra,* the Court of Appeals for the Sixth Circuit, speaking through Judge, now MR. JUSTICE, STEWART, said: "Membership should be so defined as to emphasize to the jury the necessity of finding that the appellant desired to belong to the Communist Party, and that the Communist Party recognized that it considered him as a member. *Jencks* v. *United States,* 353 U. S. at pages 657, 679, 77 S. Ct. 1007, 1019 (concurring opinion); *Fisher* v. *United States,* 9 Cir., 1956, 231 F. 2d 99, 106–107; *Travis* v. *United States,* 10 Cir., 1957, 247 F. 2d 130, 135–136 . . . ."

[8] On retrial of the *Lohman* case, *supra,* the trial court defined membership for the jury as directed by the Court of Appeals on the first appeal (see note 7) and the defendant was again convicted. On appeal, the Court of Appeals for the Sixth Circuit reapproved that instruction. *Lohman* v. *United States,* 266 F. 2d, at 4.

[9] In *Travis* v. *United States, supra,* the Court of Appeals for the Tenth Circuit said of the membership instruction, precisely like the one here, that "The instructions were meaningful and clear. They included 11 of the 14 indicia of membership outlined by Congress in Section 5 of the Communist Control Act of 1954 (50 U. S. C. A. § 844) and emphasized the primary element of membership as suggested by Mr. Justice Burton in *Jencks* v. *United States,* 353 U. S. 657, 77 S. Ct. 1007, 1019, 1 L. Ed. 2d 1103, that there must be present 'the

upon principle, it seems clear that the instruction's definition of membership was not erroneous under Count I of the indictment.

Petitioner next contends that the court's instruction failed to tell the jury precisely what objective circumstances would be sufficient to justify a finding of membership, and that the criteria which it told the jury they might consider in determining the question of membership were too indefinite to give the jury the necessary guidance. Although the ultimate fact of membership in such a case is almost necessarily a subjective one, it may be proved, as we have said, by objective facts and circumstances having a rational tendency to show, and from which the jury rationally and logically may find, the ultimate fact of membership. But, for the purpose of confining the jury's considerations to the relevant evidence, it was proper for the court to outline the objective acts, shown in the evidence, which they might consider in determining the ultimate subjective fact of membership. Here, the court's instruction, after telling the jury that intent is a state of mind and can only be determined by what an individual says and does, went on to say that in determining the issue as to whether the defendant was or was not a member of the Communist Party at the time alleged in the indictment the jury might take into consideration, as circumstances bearing on that question, the acts and statements of the defendant (see note 5, sixth paragraph), and in this connection they might take into consideration whether the defendant did the things set forth in the 12 numbered paragraphs that followed, which,

desire of an individual to belong to the organization and a recognition by the organization that it considers him as a member.' This adequately outlined the kind of acts that could be considered evidence of membership and included the idea of the continuing reciprocal relationship necessary for that status." 269 F. 2d, at 942–943.

it said, were some of the indicia of Communist Party membership (see note 5, eighth paragraph).

While the criteria specified in the numbered paragraphs of the challenged instruction were in substance 12 of the 14 criteria specified by Congress in § 5 of the Communist Control Act of 1954 (50 U. S. C. § 844) to be considered by a jury in determining Communist Party membership under that Act, it is unnecessary for us to determine in this case whether that section applies, by force of law, to prosecutions under 18 U. S. C. § 1001 for making a false affidavit to the Labor Board in purported compliance with § 9 (h) of the National Labor Relations Act, for it is obvious that those 12 criteria rationally tend to show, and were sufficient to enable a jury rationally and logically to find, the ultimate fact of membership, though subjective, and hence it was proper, independently of and wholly apart from § 5 of the Communist Control Act of 1954, to tell the jury, as this instruction did, that they might consider those criteria in determining whether the defendant was or was not a member of the Communist Party on the date charged in the indictment.

Similar criteria were contained in the membership instruction given in the *Jencks* case, *supra*,[10] and the opinion of Mr. Justice Burton did not find any error in that aspect of the instruction. Very similar instructions telling the jury that they might consider such or similar criteria in determining the ultimate subjective fact of membership within the meaning of § 9 (h) have been consistently and uniformly approved, *Hupman* v. *United States,* 219 F. 2d 243 (C. A. 6th Cir.); [11] *Fisher* v. *United States,* 231 F.

---

[10] Compare the *Jencks* instruction, 353 U. S., at 679, with the 12 numbered paragraphs in note 5.

[11] In *Hupman* v. *United States, supra,* the Court of Appeals for the Sixth Circuit said that a very similar instruction was "fair [and] substantially covered the crucial questions of law, with a careful analysis of the elements of the offense charged." 219 F. 2d, at 249.

2d 99, 107 (C. A. 9th Cir.).[12]  In *Travis* v. *United States*, 247 F. 2d 130, 135, the United States Court of Appeals for the Tenth Circuit reversed because the membership instruction failed to specify and require the jury to consider such criteria in determining the question of membership.  On retrial, the jury was instructed to consider virtually the same criteria of membership as was the jury in the instant case.  The defendants were again convicted, and, on appeal, the Court of Appeals specifically approved the instruction.  *Travis* v. *United States*, 269 F. 2d 928, 942–943.

We think there is no merit in petitioner's contention that the instruction failed adequately to state the objective circumstances that might be considered by the jury in determining membership or that the criteria submitted were too indefinite to give the jury the necessary guidance.

Nor is there any merit in petitioner's contention that those criteria allowed a finding of membership on a date other than that charged in the indictment.  That contention fails to consider the whole charge, particularly the vital fact that the court repeatedly emphasized to the jury that the issue for them to determine was whether petitioner was or was not a member of the Communist Party on the date that he executed and transmitted the affidavit.

Petitioner, and the *amici curiae*, contend that § 5 of the Communist Control Act of 1954 (50 U. S. C. § 844) is constitutionally invalid in that it violates the First Amendment of the Constitution and denies due process because it permits a jury to base its finding of membership upon statements and acts that are protected by the First Amendment.  They then argue that because the chal-

---

[12] In *Fisher* v. *United States, supra,* the Court of Appeals for the Ninth Circuit, in dealing with a similar question, said: "The jury should have been reminded of the components of the term membership rather than be supplied with synonyms." 231 F. 2d, at 107.

lenged instruction substantially adopted 12 of the 14 criteria mentioned in that section this instruction, too, was violative of the First Amendment and denied due process. We have no occasion here to consider the constitutionality of § 5 of the Communist Control Act of 1954 because, as we have said, the indicia which the challenged instruction told the jury to consider as circumstances bearing upon the issue of membership did rationally tend to show, and were sufficient, if believed, to enable the jury rationally and logically to find, the ultimate subjective fact of membership, wholly apart from and independently of § 5 of the Communist Control Act of 1954. To petitioner's argument that the submitted criteria permitted the jury to find membership from statements and acts that were wholly innocent in themselves or even protected by the First Amendment, it is enough to recall that nothing in § 9 (h) or elsewhere in the National Labor Relations Act makes or purports to make criminal either membership in or affiliation with the Communist Party, *American Communications Assn.* v. *Douds, supra,* 339 U. S., at 402, and that petitioner was not charged with criminality for being a member of or affiliated with the Communist Party, nor with participating in any criminal activities of or for the Communist Party, but only with having made and submitted to the Government an affidavit falsely swearing that he was not a member of or affiliated with the Communist Party in violation of 18 U. S. C. § 1001. It would be strange doctrine, indeed, to say that membership in the Communist Party—when, as here, a lawful status—cannot be proved by evidence of lawful acts and statements, but only by evidence of unlawful acts and statements.

*Affiliation.* We think the court's instruction defining affiliation [13] was correct under Count II of the indictment

---

[13] The instruction respecting affiliation was as follows:

"The verb 'affiliated,' as used in the Second Count of the indictment, means a relationship short of and less than membership in the

and in accord with all the precedents. A far less complete and definitive instruction on affiliation was given by the trial court in *Jencks* v. *United States, supra,* and was challenged in this Court. That instruction merely quoted dictionary definitions and then stated that "[a]ffiliation . . . means something less than membership but more than sympathy. Affiliation with the Communist Party may be proved by either circumstantial or direct evidence, or both." See 353 U. S., at 679. The Court's opinion, turning on the document production problem, did not reach that question. However the opinion of Mr. Justice Burton did reach the question. It did not find the instruction erroneous insofar as it went, but found it to be deficient because "It did not require a continuing course of conduct 'on a fairly permanent basis' 'that could not be abruptly ended without giving at least reasonable cause for the charge of a breach of good faith,' " and thus "allowed the jury to convict petitioner on the basis of

---

Communist Party, but more than that of mere sympathy for the aims and objectives of the Communist Party.

"A person may be found to be 'affiliated' with an organization, even though not a member, when there is shown to be a close working alliance or association between him and the organization, together with a mutual understanding or recognition that the organization can rely and depend upon him to cooperate with it, and to work for its benefit, for an indefinite future period upon a fairly permanent basis.

"Briefly stated, affiliation as charged in the Second Count of the indictment, means a relationship which is equivalent or equal to that of membership in all but name.

"Whether or not the defendant was affiliated with the Communist Party at the time alleged in the indictment is a question of fact which you are to determine from all the evidence in the case. Affiliation or lack of affiliation in the Communist Party may be established by direct as well as circumstantial evidence.

"In determining the issue as to whether the defendant was or was not affiliated with the Communist Party at the time alleged in the indictment, you may take into consideration any statements made or acts done by the accused, and all other facts and circumstances in evidence which may aid determination of the issue."

acts of intermittent cooperation." 353 U. S., at 679–680. The instruction given in this case contained not only the definition given in the *Jencks* case (see note 13, paragraph one) but went on to embody almost exactly the expanded definition prescribed by Mr. Justice Burton (see note 13, paragraph two). The opinions of the Courts of Appeals have uniformly approved that definition. In *Bryson* v. *United States,* 238 F. 2d 657, 664, the United States Court of Appeals for the Ninth Circuit found an identical instruction to be "full and complete" and said that it "adequately informed the jury of the meaning of the term [affiliated with] and provided an adequate standard for evaluating the evidence." In *Lohman* v. *United States,* 251 F. 2d 951, 954, the United States Court of Appeals for the Sixth Circuit, speaking through Judge, now MR. JUSTICE, STEWART, specifically approved the definition of "affiliated with" prescribed by Mr. Justice Burton's opinion in the *Jencks* case; and in *Travis* v. *United States,* 247 F. 2d 130, 135, the United States Court of Appeals for the Tenth Circuit approved an almost identical instruction.[14]

Petitioner contends that one may not be "affiliated with" the Communist Party, within the meaning of § 9 (h), by any direct relationship with the Party, but only by being a member of another organization that is affiliated with the Party, and that the instruction was erroneous for failure so to advise the jury. If petitioner is right in this contention it would follow, despite the fact the question is foreclosed against him here, that the evidence did not make a submissible case for the jury on Count II of the indictment and his motion for a directed verdict of acquittal on that count should have been granted, for there was no evidence that petitioner was

---

[14] Compare *United States ex rel. Kettunen* v. *Reimer,* 79 F. 2d 315 (C. A. 2d Cir.), and *Bridges* v. *Wixon,* 326 U. S. 135, defining the term affiliation but as used in the deportation statutes.

affiliated with the Communist Party through membership in some other organization. It is true that one may be "affiliated with" the Communist Party through membership in an organization that is affiliated with the Communist Party, *American Communications Assn.* v. *Douds, supra,* 339 U. S., at 406, 421, 450, but that is not to say one may not do so directly, and every decision that has considered the meaning of "affiliated with," as used in § 9 (h), has held that one may be directly affiliated with the Communist Party. See Mr. Justice Burton's separate concurring opinion in *Jencks* v. *United States, supra,* 353 U. S., at 672, 679; and *Bryson* v. *United States, supra,* 238 F. 2d, at 664; *Lohman* v. *United States, supra,* 251 F. 2d, at 954; *Travis* v. *United States, supra,* 269 F. 2d, at 942.

In a manner similar to his attack upon the court's instruction defining membership, petitioner contends that the instruction in question erroneously defined the phrase "affiliated with" only in subjective terms and without objective criteria. However, just as with regard to membership, affiliation, in relation to Count II in this case, is necessarily subjective. But the ultimate fact of affiliation, though subjective, may be proved by evidence of objective facts and circumstances having a rational tendency to show, and from which the jury may rationally and logically find, the ultimate fact of affiliation. It cannot be disputed here that there was such evidence at the trial. The court's instruction told the jury that "[w]hether or not the defendant was affiliated with the Communist party . . . is a question of fact which you are to determine from all the evidence in the case," and that their determination should be based on the "statements made or acts done by the accused, and all other facts and circumstances in evidence . . . ." We think that instruction was adequate.

Petitioner argues that because the first paragraph of the instruction stated that affiliation "means a relation-

ship short of and less than membership in the Communist Party, but more than that of mere sympathy for the aims and objectives of the Communist Party," and the third paragraph of the instruction stated that "affiliation . . . means a relationship which is equivalent or equal to that of membership in all but name," it was contradictory and confusing. We agree that the third paragraph appears inconsistent with the first. However, it is evident that the erroneous third paragraph could not have prejudiced petitioner for it, though inconsistent with the correct first paragraph, exacted a higher standard of proof of affiliation than the law required.

Petitioner, quite understandably, would require instructions as specific as mathematical formulas. But such specificity often is impossible. The phrases "member of" and "affiliated with," especially when applied to the relationship between persons and organizations that conceal their connection, cannot be defined in absolute terms. The most that is possible, and hence all that can be expected, is that the trial court shall give the jury a fair statement of the issues—*i. e.,* whether petitioner was a member of or affiliated with the Communist Party on the date of his affidavit—give a reasonable definition of the terms and outline the various criteria, shown in the evidence, which the jury may consider in determining the ultimate issues. We believe that the instructions in this case, which are consistent with all the judicial precedents under § 9 (h), adequately met those tests.

Accordingly, the judgment is vacated and the case is remanded to the District Court for further proceedings consistent with this opinion.

*It is so ordered.*

Mr. Justice Black, dissenting.

As a prerequisite to his union's right to seek relief from unfair labor practices before the National Labor Relations Board, petitioner was compelled to subscribe to an oath

which stated: (1) "I am not a member of the Communist Party or affiliated with such Party;" and (2) "I do not believe in, and I am not a member of nor do I support any organization that believes in or teaches, the overthrow of the United States Government by force or by any illegal or unconstitutional methods." The Government now claims that in submitting to this compulsion petitioner made false statements as to his membership in and affiliation with the Communist Party, and on the basis of these allegedly false statements it seeks to send petitioner to prison. I agree with MR. JUSTICE DOUGLAS that if the Government is to be allowed to do this sort of thing at all, it should only be upon a showing that petitioner was a member who engaged in illegal activities in connection with his Communist Party membership. But I wish also to reiterate my own belief that our Constitution, properly interpreted and applied, would prohibit this prosecution completely—regardless of the nature of petitioner's connection with the Communist Party. I think the Constitution absolutely prohibits the Government from sending people to jail for "crimes" that arise out of, and indeed are manufactured out of, the imposition of test oaths that invade the freedoms of belief and political association—freedoms which the Founders of our Nation recognized as indispensable to a democratic society.

The test oath is an historic weapon against religious and political minorities, but the fact that this practice has survived the centuries surely cannot be pointed to either as a source of pride or, in my judgment, as evidence that the practice is constitutional. Quite the contrary, I think that history shows test oaths to be one of the most generally and continuously hated and dangerous forms of governmental intrusion upon individual freedom that liberty-loving people have had to contend with. It was squarely in the face of this history of almost universal condemnation that this Court, in *American Communica-*

*tions Assn.* v. *Douds,* 339 U. S. 382, upheld the test oath requirement upon which this prosecution is based, resting its decision upon the ground that however obnoxious test oaths may be, they must be endured in the interest of interstate commerce. Eleven years have elapsed since that decision and I think it is fair to say that this recent experience with test oaths in this country has done nothing to change the evil reputation they gained throughout previous centuries in other countries. The question before us now is thus no different from that originally presented to us in *Douds:* Can Congress, in the name of regulation of interstate commerce, circumvent the history, language and purpose of our Bill of Rights and impose test oaths designed to penalize political or religious minorities? I would overrule the decision in *Douds* and order this prosecution dismissed. As I said there, "Whether religious, political, or both, test oaths are implacable foes of free thought. By approving their imposition, this Court has injected compromise into a field where the First Amendment forbids compromise." *Id.,* at 448.

MR. JUSTICE DOUGLAS has asked me to add the following: "I deduce from what the Court does today that the *Douds* decision was good for one Monday only and that it is being overruled *sub silentio* on the point now in issue. I did not participate in the *Douds* decision as I was necessarily absent when it was argued. I would, however, be content to decide this case within the framework which the *Douds* case established. Yet since the *Douds* decision is now apparently discarded on the point in issue, and since we face anew the precise question it tendered, I see no constitutional answer to the opinions of MR. JUSTICE BLACK in that case and in the present one that Congress has no power to exact from people affirmations or affidavits of belief, apart from the accepted form of oath of office demanded of all officials."

MR. JUSTICE DOUGLAS, with whom THE CHIEF JUSTICE and MR. JUSTICE BLACK concur, dissenting.

This is a prosecution under 18 U. S. C. § 1001 which penalizes the making of false statements on a matter within the jurisdiction of a federal agency. The false statements charged in the indictment involve 29 U. S. C. § 159 (h), which is § 9 (h) of the National Labor Relations Act—the provision that required [1] the filing of the so-called noncommunist affidavit before the National Labor Relations Board could entertain petitions of a union. See *Leedom* v. *International Union,* 352 U. S. 145. One count charged that petitioner's affidavit, filed under § 9 (h), that he was not "a member of the Communist Party" was false. A second count charged that the affidavit was also false in averring he was not "affiliated" with that party. After a jury trial, petitioner was convicted under both counts and sentenced to terms that run concurrently.

An instruction, offered by defendant and refused by the Court, reads as follows:

> "Whether intermittent or repeated, the act or acts tending to prove membership and that both the defendant and the communist party intended such a relationship to exist on December 11, 1952, must be of that quality which indicates an adherence to or a furtherance of the illegal purposes or objectives of the communist party as distinguished from mere cooperation with it in lawful activities. The act or acts must evidence a working alliance to bring the illegal program to fruition. Unless there is evidence which convinces you beyond a reasonable doubt of some illegal purpose or objective of the communist party on December 11, 1952 and that the relationship

---

[1] It was repealed by the Act of September 14, 1959, 73 Stat. 519, 525.

between the defendant and the communist party on and after this date was a relationship based on the illegal purpose or objective, you must acquit the defendant on Count I of the indictment."

I do not see how denial of this instruction was consistent with the Court's decision in *Communications Assn.* v. *Douds,* 339 U. S. 382. In that case, as in the present one, the Court dealt with the constitutionality of the "Affidavit of Noncommunist Union Officer." The affidavit now, as then, reads as follows:

"The undersigned, being duly sworn, deposes and says:

"1. I am a responsible officer of the union named below.

"2. I am not a member of the Communist Party or affiliated with such party.

"3. I do not believe in, and I am not a member of nor do I support any organization that believes in or teaches, the overthrow of the United States Government by force or by any illegal or unconstitutional methods."

It was this affidavit that petitioner executed.

In *Douds* the Court sustained the constitutionality of the required affidavit by tailoring it to exclude membership that did not include belief in the overthrow of the government by force or other illegal or unconstitutional means. Chief Justice Vinson said for the Court:

"We hold, therefore, that the belief identified in § 9 (h) is a belief in the objective of overthrow by force or by any illegal or unconstitutional methods of the Government of the United States as it now exists under the Constitution and laws thereof." 339 U. S. 382, 407–408.

MR. JUSTICE FRANKFURTER, who joined the Court's opinion, filed a separate opinion in which he pin-pointed one of the objections running to the broad definition now, as well as then, given the term "member":

"I cannot deem it within the rightful authority of Congress to probe into opinions that involve only an argumentative demonstration of some coincidental parallelism of belief with some of the beliefs of those who direct the policy of the Communist Party, though without any allegiance to it. To require oaths as to matters that open up such possibilities invades the inner life of men whose compassionate thought or doctrinaire hopes may be as far removed from any dangerous kinship with the Communist creed as were those of the founders of the present orthodox political parties in this country.

"The offensive provisions of § 9 (h) leave unaffected, however, the valid portions of the section. In § 16, Congress has made express provision for such severance. Since the judgments below were based in part on what I deem unconstitutional requirements, I cannot affirm but would remand to give opportunity to obey merely the valid portions of § 9 (h)." 339 U. S. 382, 422.

Beliefs are as much in issue here as they were in the *Douds* case. If that case means anything, it means that one who was a member only to promote a lawful cause of the party should not be subjected to the legal odium that attaches to full-fledged members. The fact that one believes in peace, disarmament, a ban on nuclear testing, or the disbandment of NATO may put him out of step with the majority. But unless we toss to the winds the tolerance which a Free Society shows for unorthodox, as well as orthodox, views, the fact that a person embraces lawful views of the party should not establish that he is

a "member" of the party within the meaning of the Act. Membership, as that word is used in the Act, should be proved by facts which tie the accused to the illegal aims of the party. If beliefs are used to condemn the individual, we have ourselves gone a long way down the totalitarian path.

Killian's association with the party appears to have been restricted to lawful purposes: he was against this country's policies in Indo-China; he was for the recognition of Red China; he was against colonialism; he was against war; he urged people to subscribe to The Daily Worker. He attended party meetings, promoted a united front, discussed current political events, recruited Negroes for party membership, and the like. If his attendance at the meetings was for an illegal purpose, I have failed to find it in the record. I find no evidence that Killian used his affiliation with the party to promote immediately or even at long range the overthrow of the government. I find no evidence that he organized violence, promoted sabotage, collected arms, or spied for a foreign power. If he lied in his affidavit, he lied about his beliefs. But insofar as the record shows, he had a right to promote those beliefs alone or in association with others. All the beliefs I find espoused by Killian in this record were protected by the First Amendment. He had a right to advocate them alone or in conjunction with others.[2] Some causes

---

[2] "It is altogether impossible to reason from the opinions which a man professes to his feelings and his actions; and in fact no person is ever such a fool as to reason thus, except when he wants a pretext for persecuting his neighbours. A Christian is commanded, under the strongest sanctions, to be just in all his dealings. Yet to how many of the twenty-four millions of professing Christians in these islands would any man in his senses lend a thousand pounds without security? A man who should act, for one day, on the supposition that all the people about him were influenced by the religion which they profess, would find himself ruined before night; and no man ever does act on that supposition in any of the ordinary concerns of

espoused by the Communist Party may be wholly lawful. Such was the case in *De Jonge* v. *Oregon*, 299 U. S. 353, where speeches were made "against illegal raids on workers' halls and homes and against the shooting of striking longshoremen" by the police and "against conditions in the county jail," *id.*, at 359. That "peaceable assembly" and that "lawful public discussion" (*id.*, at 365) were held not subject to punishment, even though the meeting was under the auspices of an organization that might have been prosecuted for other activities. If the *De Jonge* case means anything, it means there must be a separation of the lawful from the unlawful activities of a party when a "member" is summoned to account for his actions.

In varied situations this Court has refused to bring down on people heavy penalties for being a "Communist" or for being "affiliated" with that party where the acts to prove it were intrinsically innocent.

The Court took that view in cases under the Smith Act. *Scales* v. *United States*, 367 U. S. 203, 222:

"We decline to attribute to Congress a purpose to punish nominal membership, even though accompanied by 'knowledge' and 'intent,' not merely because of the close constitutional questions that such a purpose would raise . . . but also for two other reasons: It is not to be lightly inferred that Congress intended to visit upon mere passive mem-

---

life, in borrowing, in lending, in buying, or in selling. But when any of our fellow-creatures are to be oppressed, the case is different. Then we represent those motives which we know to be so feeble for good as omnipotent for evil. Then we lay to the charge of our victims all the vices and follies to which their doctrines, however remotely, seem to tend. We forget that the same weakness, the same laxity, the same disposition to prefer the present to the future, which make men worse than a good religion, make them better than a bad one." Macaulay's Essays (N. Y. 1869), p. 668.

bers the heavy penalties imposed by the Smith Act. Nor can we assume that it was Congress' purpose to allow the quality of the punishable membership to be measured solely by the varying standards of that relationship as subjectively viewed by different organizations. It is more reasonable to believe that Congress contemplated an objective standard fixed by the law itself, thereby assuring an even-handed application of the statute."

In light of the *Scales* decision and the prior decision in *Yates* v. *United States,* 354 U. S. 298, it is difficult to see why, if membership is to be punished, a different standard should be applied here from that applied in the Smith Act. The constitutional overtones are as pronounced here as they were in *Yates* and *Scales.* Attributing to Congress a purpose to impose punitive measures "upon mere passive members" is as unwarranted here as in those other situations. We should say here what was said in *Scales, supra,* pp. 229–230.

"The clause does not make criminal all association with an organization which has been shown to engage in illegal advocacy. There must be clear proof that a defendant 'specifically intend[s] to accomplish [the aims of the organization] by resort to violence.' *Noto* v. *United States, post,* p. 290. Thus the member for whom the organization is a vehicle for the advancement of legitimate aims and policies does not fall within the ban of the statute: he lacks the requisite specific intent 'to bring about the overthrow of the government as speedily as circumstances would permit.' Such a person may be foolish, deluded, or perhaps merely optimistic, but he is not by this statute made a criminal." Cf. *Rowoldt* v. *Perfetto,* 355 U. S. 115.

To convict petitioner for membership linked only to the lawful objectives of the party is inconsistent with the

holding in the *De Jonge* case, with what the Court did in *Yates* and *Scales,* and with the definition of "member" spelled out with particularity in the *Douds* case.

It may be that a jury on this record could find that petitioner was a member who adhered to the illegal purposes of the Communist Party. But unless the issues are so restricted, beliefs that were held in the *Douds* case to be immune from the Government's inquiry now become elements of a crime.

MR. JUSTICE BRENNAN, dissenting.

I dissent because I think the instructions to the jury on the crucial definitions of membership and affiliation were fatally defective in light of our decision 12 years ago in *American Communications Assn.* v. *Douds,* 339 U. S. 382. The trial judge refused to give the following instruction requested by the petitioner:

> "The communist party, like other voluntary organizations, sets forth conditions which a person must accept in order to become and remain a member. The burden is on the prosecution to prove beyond a reasonable doubt what the conditions for such membership were on the date in question, whether found in its constitution or elsewhere, and that the defendant accepted these conditions." [1]

In my view such an instruction was required under our decision in *Douds* and it was error to refuse it.

## I.

*Douds* sustained § 9 (h) against constitutional challenge. Its constitutionality was sustained not, as here, within the limited framework of a perjury prosecution

---

[1] This is the third paragraph of Defendant's Proposed Instruction No. 16–17, found at pp. 606–608 of the trial transcript on file with the Clerk.

but rather in the large—against the broadside challenges arising from denials of recourse to the processes of the National Labor Relations Board to unions whose officers refused to execute the required affidavits. In that context an interpretation of "member" clearly emerges from the *Douds* decision. Yet in this case, which squarely presents an issue as to the correctness of an instruction on the meaning of "member" as used in § 9 (h), the majority makes not a single reference to that interpretation, which is at war with the majority's holding here.

Only six members of the Court participated in *Douds*. Chief Justice Vinson wrote an opinion for himself and Justices Reed and Burton. MR. JUSTICE FRANKFURTER wrote a separate opinion but, as regards the issue immediately to be discussed, Chief Justice Vinson also spoke for him.

The opinion of Chief Justice Vinson is partially a bifurcated one, distinguishing the clause forswearing membership in or affiliation with the Communist Party,[2] which this case implicates, from the "belief" clause [3] under which the Government does not here charge the petitioner with false swearing.

As to the "membership" portion of the oath, the opinion of the Chief Justice held for the majority of the participating Justices that Congress could validly impute to the Communist Party an institutional predilection for political strikes, and could reasonably act on the assumption that members of the Party or its affiliates would partake of that predisposition. As the Chief Justice's opinion saw it, the crucial issue as to this part of the oath was whether, granting the permissibility of the assumptions,

---

[2] *I. e.,* "that he is not a member of the Communist Party or affiliated with such party."

[3] *I. e.,* "that he does not believe in, and is not a member of or supports any organization that believes in or teaches, the overthrow of the United States Government by force or by any illegal or unconstitutional methods."

§ 9 (h) incorporated an allowable mode of regulation in view of its undoubted inhibiting effect upon participation in legitimate Party activities within the ambit of the First Amendment. The opinion held for constitutionality, concluding that the public interest in preventing political strikes justified the tangential interference with legitimate activity. No definitional problem respecting "member" or "affiliate" was considered in this context.

Coming to the "belief" clause, however, the Chief Justice found it necessary to construe that portion of the oath as referring to belief in violent overthrow "as an objective, not merely a prophecy." [4] His view was that the clause, assisted by this gloss, presented no different problem from that already discussed in connection with membership, with one exception which is crucial for our purposes. The special problem which the Chief Justice perceived was one of proof:

> "Insofar as a distinction between beliefs and political affiliations is based upon absence of any 'overt act' in the former case, it is relevant, if at all, in connection with problems of proof. *In proving that one swore falsely that he is not a Communist, the act of joining the Party is crucial.* Proof that one lied in swearing that he does not believe in overthrow of the Government by force, on the other hand, must consist in proof of his mental state. To that extent they differ.
>
> "To state the difference, however, is but to recognize that while objective facts may be proved directly, the state of a man's mind must be inferred from the things he says or does. Of course we agree that the courts cannot 'ascertain the thought that has had no outward manifestation.' But courts and juries every day pass upon knowledge, belief and intent—the state of men's minds—having before them no more

---

[4] 339 U. S., at 407.

than evidence of their words and conduct, from which, in ordinary human experience, mental condition may be inferred. . . . False swearing in signing the affidavit must, as in other cases where mental state is in issue, be proved by the outward manifestations of state of mind. In the absence of such manifestations, which are as much 'overt acts' as the act of joining the Communist Party, there can be no successful prosecution for false swearing." [5]

It was, of course, obvious to the Court in *Douds* that the *belief* portion of the oath referred to a subjective phenomenon—the affiant's internal attachment to the goal of violent overthrow—which would have to be provable wholly through his statements and writings—"the outward manifestations of state of mind." But it is equally obvious that the *Douds* Court had no notion that *membership* could be taken as signifying a subjective relationship of mutuality, provable by actions not particularly bespeaking an externally manifested tie. For it is clear beyond cavil that, to the Court in *Douds*, a conviction under the membership clause required evidence from which could be inferred the existence, beyond a reasonable doubt, of an "objective fact"—"the act of joining the Party." That this is so only becomes more apparent from examination of the separate opinions of JUSTICES FRANKFURTER [6] and Jackson.[7] It is evident that the five

[5] *Id.*, at 410–411. (Emphasis added.)

[6] My Brother FRANKFURTER joined in the opinion of the Chief Justice as it related to the membership portion of the oath. He agreed that the membership clause was constitutional, and that the belief clause would have been constitutional had it been susceptible of the gloss endowed by the Chief Justice. His understanding of the meanings to be attributed to "member" and "affiliate" clearly emerges from the following, read in light of his holding that the membership clause is constitutional:

"If I possibly could, to avoid questions of unconstitutionality I would construe the requirements of § 9 (h) to be restricted to dis-

Justices who sustained the membership clause considered membership to involve an externally manifested act or acts of association and admission, understood as such by the Party and by the member. This is the *"Douds* sense" of membership to which I subsequently refer.

Accordingly, since the Court today authorizes an instruction which permits a jury to convict of false swearing as to membership, conceived as a purely subjective phenomenon, without the jury's having had to conclude that membership in the *Douds* sense existed, it goes beyond *Douds* and repudiates a critical assumption of that decision.[8]

---

avowal of *actual membership* in the Communist Party, or in an organization that is in fact a controlled cover for that Party or of active belief, as a matter of present policy, in the overthrow of the Government of the United States by force." 339 U. S., at 421–422. (Emphasis added.)

[7] To Mr. Justice Jackson, writing separately, the belief portion of the oath appeared unconstitutional. He agreed that the membership clause could withstand attack, but only because of certain peculiar characteristics he discerned in the Communist Party and in the condition of membership in it. Underlying his holding was the proposition that the Communist Party was a foreign-controlled organization dedicated to the seizure of power by force; but the final, and crucial, link in the chain of reasoning was his characterization of membership in the party:

"Membership in the Communist Party is totally different [from membership in other political parties]. The Party is a secret conclave. Members are admitted only upon acceptance as reliable and after indoctrination in its policies, to which the member is fully committed. They are provided with cards or credentials, usually issued under false names so that the identification can only be made by officers of the Party who hold the code. Moreover, each pledges unconditional obedience to party authority." *Id.*, at 432.

It was the forswearing of this type of membership—and no other—which Mr. Justice Jackson held that Congress constitutionally could require.

[8] Since *Douds* can be authority for the constitutionality of the membership clause of § 9 (h) only with respect to the Court's clear understanding there of the meaning of "member," today's approval of a

## II.

The district judge's instruction concerning membership is most effectively dealt with by considering, first, his definition of "membership," and, second, his enumeration of facts by which membership so defined could be proven.

The entire definition of membership was this:

> "Membership in the Communist Party, the same as membership in any other organization, constitutes the state of being one of those persons who belong to or comprise the Communist Party. It connotes a status of mutuality between the individual and the organization. That is to say, there must be present the desire on the part of the individual to belong to the Communist Party and a recognition by that Party that it considers him as a member."

All must agree that it is in the third sentence alone that the definition resides; for the first sentence is mere tautology, while the second is far too vague to be of any help whatever. The most striking thing about the third sentence is that, although it is ambiguous, standing alone

---

substantially altered definition appears to make necessary a new piece of constitutional adjudication. To put it another way, there is implicit in the majority's opinion—though unspoken—a holding that § 9 (h) is constitutional with the definition of membership which omits the *Douds* requirement. Because I think that the trial judge's erroneous instruction itself required reversal, I express no view on this constitutional question. Nor is this a matter without real significance. The *Douds* Court found "delicate and difficult," 339 U. S., at 400, the problem whether membership in the narrow sense there used sufficiently justified an inference of the likelihood of political strikes to warrant the resulting inhibition of protected activity. To substitute for the narrow definition of membership a concept the existence of which is provable by the acts enumerated by the district judge, see *infra*, pp. 274–275, quite clearly creates the need for a fresh exercise of judgment.

it might possibly be thought consistent with *Douds*.[9]
"Recognition" by the Party that it "considers" one to be
a member might suggest the objective manifestation of
acceptance—the externalized establishment of the tie—
which *Douds* conceived to be necessary to the relation-
ship. The additional element of "desire on the part of
the individual to belong" would simply except from
"membership" a formal association entered into unwit-
tingly or on account of duress.[10] But, if the definition of
membership in question does omit the *Douds* element of
objective, outward alliance—as I believe it does, in light
of the instructions which followed—then its application
in this case raises a grave question of fair warning.

*Douds* was decided on May 8, 1950. Two and one-half
years later, on December 11, 1952, Killian swore that he
was not a member of the Communist Party. Why he
should have supposed that he was disavowing anything
except objectively manifested *Douds*-sense membership—
the most natural meaning to impute to the oath, and the
one explicitly assumed by the Court in upholding the con-
stitutionality of its exaction—I cannot imagine. To
convict him of perjury now, on the assumption that mem-
bership may exist without externalized application to and
acceptance into the organization, is to trap petitioner in
the backlash of an unpredictable shift in construction.

### III.

For the reasons above stated, I conclude that the dis-
trict judge's definition of "membership" could have been
correct only if it meant, and reasonably must have been

---

[9] For this reason, I do not understand that the brief suggestion of
three members of the Court in *Jencks*, 353 U. S., at 679, that mem-
bership be defined in language similar to that of the third sentence,
lends any support to today's new holding that membership may be
conceived for our purposes as a strictly subjective phenomenon.

[10] Compare *Rowoldt* v. *Perfetto*, 355 U. S. 115.

taken to mean, that some objective act of joining and acceptance is a requisite element. The judge did not rest with his definition of membership, but went on to instruct the jury what evidence it could consider in determining the membership issue. I do not reach the question whether the evidence in this case was sufficient to convict under a proper instruction. It is not necessary to hold that direct proof of the act of joining is required, in order to conclude that, because so many of the matters enumerated by the judge are devoid of any rational tendency to show membership in the *Douds* sense, the conviction must be reversed. The effect of this part of the instruction was either to authorize the jury to consider evidence not relevant to membership as properly defined, or to lead it into thinking that it might convict although it never found membership in the *Douds* sense.[11]

Among the indicia of membership which the jury was authorized to consider were the following:

(a) Whether the petitioner "paid dues *or made any financial contributions to the Communist Party* or collected any funds on its behalf."

(b) Whether the petitioner "attended Communist Party meetings, *classes, conferences, or any other type* of Communist Party gathering."

(c) Whether petitioner "has been accepted to his knowledge as an officer or member of the Communist Party, *or as one to be called upon for services by other officers or members of the Communist Party.*"

(d) Whether petitioner *"has conferred with officers or other members of the Communist Party in*

---

[11] The effect of the enumerated indicia surely was not sufficiently dispelled by the halting admonition that *"individual* and *unrelated isolated* acts of the defendant showing cooperation with the Communist Party or *isolated* statements of the defendant showing sympathy with the Communist Party are not in themselves *conclusive* evidence of membership . . . ." Transcript, 705. (Emphasis added.)

*behalf of any plan or enterprise of the Communist Party."*

(e) Whether petitioner *"has advised, counseled, or in any other way imparted information, suggestions, or recommendations, to officers or members of the Communist Party, or to anyone else, in behalf of the Communist Party."*

(f) Whether petitioner *"has spoken or in any other way communicated orders, directives or plans of the Communist Party."* (Emphasis added.)

Surely the enumerated italicized indicia are too free-wheeling and open-ended to be permissible descriptions of factual phenomena from which the existence of membership in anything resembling the *Douds* sense might be inferred. And the error was compounded; for the jury were instructed that they might consider whether the petitioner "has indicated by word, action, conduct, writing, or in any other way, a willingness to carry out in any manner and to any degree the plans, objectives or designs of the Communist Party"; or whether he "has in any other way participated in the activities, planning or actions of the Communist Party." Surely it cannot be said that such indicia are probative of membership in any sense of that term which could justify a legislative assumption that membership, so defined, imported a dangerous possibility of resort to political strikes—the very premise of constitutionality in *Douds*.

To sum up: Either the enumerated factual matters recommended to the jury's consideration by the instruction were in significant measure irrelevant, or they betokened a definition of membership which so radically departs from our own previous understanding that (a) the constitutionality of § 9 (h) should be reconsidered in its light and (b) it is grossly unfair to convict Killian of perjury on the basis of this new definition which he cannot be held to have foreseen, swearing, as he did, but

two and one-half years after the *Douds* decision was announced. The District Court should have drafted an instruction which would have required the jury—in order to return a conviction—to have concluded that Killian was a member in the *Douds* sense. This it clearly failed to do. I therefore think that the conviction on Count I must be reversed.

### IV.

I think that the same fatal defects inhere in the instruction on "affiliation." My Brother FRANKFURTER in *Douds* expressed the view that to avoid questions of unconstitutionality, affiliation should be construed in § 9 (h) as limited to proof of actual membership "in an organization that is in fact a controlled cover for [the Communist] . . . party," [12] and all who joined the Chief Justice's opinion manifested their understanding that this was what affiliation meant.[13] No instruction in this form was given. However, unlike the case as to "membership," no instruction embodying the *Douds* definition of "affiliation" was requested nor did petitioner's counsel in objecting to the instruction rely on the *Douds* interpretation. I, therefore, can see no basis for a reversal of the conviction under Count II. Fed. Rules Crim. Proc. 30.

### V.

Since my views have not prevailed as regards the instructions and the instructions actually given have been sustained, I must say a word as to the Court's disposition of the *Jencks* issue. I agree with the disposition which remands the cause to the District Court for a hearing confined to the issues raised by the Solicitor General's representations. See *Campbell* v. *United States*, 365 U. S. 85. I also agree that if the trial court finds that the infor-

---

[12] 339 U. S., at 421.

[13] *Id.,* at 406.

mation contained on the two Ondrejka receipts had already been given to petitioner in other statements of Ondrejka earlier turned over to petitioner, the District Court could find that the error in failing to produce those two receipts was harmless. *Rosenberg* v. *United States,* 360 U. S. 367, 377, footnote (dissenting opinion). But if the information on the receipts has not been given to petitioner in other statements of Ondrejka, I think the district judge must order a new trial for the reasons stated in my dissent in *Rosenberg* v. *United States,* 360 U. S. 367, 373.