George BANKS, Appellant,

v.

UNITED STATES of America,
Appellee.

Willie JOHNSON, Appellant,

v.

UNITED STATES of America,
Appellee.

Howard Eugene ROWELL, Appellant,

v.

UNITED STATES of America,
Appellee.

Nos. 17764, 17767, 17772.

United States Court of Appeals
Eighth Circuit.

July 15, 1965.

Johnsen, Chief Judge, dissented.

Robert G. Duncan, of Simon & Pierce, Kansas City, Mo., Kenneth K. Simon, Kansas City, Mo., for appellants.

Clifford M. Spottsville, Asst. U. S. Atty., Kansas City, Mo., F. Russell Millin, U. S. Atty., Kansas City, Mo., for appellee.

Before JOHNSEN, Chief Judge, and VOGEL and MATTHES, Circuit Judges.

MATTHES, Circuit Judge.

The defendants were found guilty by a jury of violating 18 U.S.C. § 371, 26 U.S.C. §§ 4742(a) and 4744(a)[1] and have appealed in forma pauperis from the judgments of conviction entered on the jury verdicts.

Prosecution by indictment was waived and a multiple count information was filed against the defendants. Count I charged the defendants with conspiring together to violate 26 U.S.C. § 4742(a). The other counts alleged substantive violations of 26 U.S.C. § 4742(a) and 4744(a). In addition to Count I, defendant Banks was charged in Counts II, III, VI and VII; defendant Johnson in Counts VIII, IX, X and XI; and defendant Rowell in Counts II, III, IV, V, X, XI, XII and XIII. On the day of trial the Government dismissed Counts X and XI as to all defendants. The transfer and possession counts that were tried grew out of occurrences alleged to have taken place on September 2, September 9, September 10, September 17 and December 18, 1963, in Kansas City, Missouri.

Banks was sentenced to six years on each of the five counts against him, to run concurrently. Johnson also received a six-year sentence on each of the three counts against him, to run concurrently, and Rowell, because of a prior violation of the narcotic laws, was sentenced to twelve years on each of his seven counts, to run concurrently.

Although the defendants filed motions for judgments of acquittal at the close of the case, they do not here challenge the sufficiency of the evidence to support the jury verdicts and the judgments of conviction; therefore, we regard a detailed statement of the evidence as wholly unnecessary. The transcript of the trial proceedings, which has been carefully examined and considered, demonstrates with compelling force that the jury's verdicts were responsive to the evidence.

The events out of which the prosecution emanated followed the pattern frequently found in narcotic cases. The Government informer, this time one John McCullough, also known as William

1. 18 U.S.C. § 371, the conspiracy statute, makes it a crime for two or more persons to conspire to commit any offense against the United States.

26 U.S.C. § 4742(a) provides that it shall be unlawful for any person to transfer marihuana except in pursuance of a written order of the person to whom such marihuana is transferred on a form issued by the Secretary or his delegate; 26 U.S.C. § 4744(a) provides it shall be unlawful to acquire and obtain marihuana.

Green,[2] working under instructions of the District Supervisor of the Narcotic Bureau in Kansas City, Missouri, purchased marihuana on the five dates alleged in the information. The informer was thoroughly searched before he started on his mission, no marihuana was found, he was then given the required amount of "advance official funds." After the purchase was made, the informer would meet the narcotic agents at a previously designated place and deliver the fruits of his mission to such agents. The informer was under constant surveillance on each of the occasions by narcotic agents who testified in detail to the informer's movements. Other essential elements of the offense, i. e., lack of possession of an order form by the informer, and the contents of the contraband merchandise were established. There was likewise substantial evidence to support the conspiracy conviction. The defendants offered no evidence.

Defendants premise their claims of reversible error upon four points: (1) denial of rights conferred upon them by the Jencks Act, 18 U.S.C.A. § 3500; (2) failure to suppress information obtained by one of the narcotic agents through monitoring a telephone conversation between defendant Rowell and the Government informer; (3) denial of motion to dismiss the information for failure to name the transferee of the marihuana; and (4) denial of a requested instruction on entrapment.

■ *The Jencks Act Violation.* The record in this regard reveals the following: The cross-examination of McCullough, the informer, ended on the first day of trial with the statement from Mr. Simon, attorney for the defendants: "Thank you, sir, no further questions." The following morning at the beginning of the proceedings counsel for defendants requested and was granted leave "to recall Mr. McCullough * * * for further cross-examination." Thereupon, it was developed for the first time of rec-

ord, that McCullough had made and given to the narcotic agents written statements concerning the purchases of the subject marihuana. Although the Assistant United States Attorney did not object to Mr. Simon's request "under Title 18, Section 3500, that the defendant be furnished with a copy of the statements of Mr. McCullough" the court nevertheless ruled:

"The request will be denied on the ground that the witness was fully cross-examined by counsel for defendants yesterday. It was announced that he had completed his cross-examination. The witness was excused temporarily at least. There was considerable discussion had between Court and counsel [not a matter of record] as to whether or not the witness would be excused to attend another court, and the Court felt that he should remain here in case of anything in the future that might be required. The Court feels that under Section 3500, it is intended to afford defendant an opportunity to see any statement that may have been given for the purpose of cross-examination, and after the completion of cross-examination he is not entitled to see the statement.

"Mr. Simon: Your Honor, may we approach the bench and I would like to dictate into the record counsel's authority for the preservation of the record on this point?

"The Court: Very well. We discussed this matter in chambers this morning."

Counsel for the defendants thereupon took proper exception to the court's action in denying his request for the statement.

18 U.S.C.A. § 3500, provides in pertinent part:

"(b) After a witness called by the United States *has testified on direct examination,* the court shall,

---

2. McCullough had been an informer for fourteen years and at the time of the trial was "working with the New York State Narcotics Control."

on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use. (Emphasis supplied)

\* \* \* \* \* \*

"(d) If the United States elects not to comply with an order of the court under paragraph (b) or (c) hereof to deliver to the defendant any such statement, or such portion thereof as the court may direct, the court shall strike from the record the testimony of the witness, and the trial shall proceed unless the court in its discretion shall determine that the interests of justice require that a mistrial be declared."

In Palermo v. United States, 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959), the Supreme Court, for the first time, examined the Act for the purpose, in particular, of determining the "scope and meaning of the statutory definition of 'statement' contained in (e)." This case teaches that no statement of a Government witness made to an agent of the Government shall be turned over to the defense "until the witness has testified on direct examination. This section manifests the general statutory aim to restrict the use of such statements to impeachment." Id. p. 349, 79 S.Ct. p. 1223.

Rosenberg v. United States, 360 U.S. 367, 79 S.Ct. 1231, 3 L.Ed.2d 1304 (1959), and Killian v. United States, 368 U.S. 231, 243, 82 S.Ct. 302, 7 L.Ed.2d 256 (1961), stand for the proposition that the harmless error rule may under proper circumstances be applied to a Jencks Act violation. See also Lewis v. United States, 340 F.2d 678, 683 (8 Cir. 1965); Karp v. United States, 277 F.2d 843 (8 Cir. 1960).

The burden rests upon the defense to invoke the statute *at the proper time;* "no ritual of words" is required but the defense must tender to the court the question of the producibility of the document, at a time when it is possible for the court to order it produced. Ogden v. United States, 303 F.2d 724 (9 Cir. 1962). In our Lewis case, supra, we said at p. 682:

"\* \* \* Once *producibility* is established the defendant has an absolute right to the statement, or, in the alternative, to have the testimony of the witness stricken if the Government refuses to comply, and failure to so order is reversible error." (Citing cases).

And it is no part of the district court's function to speculate whether the statement will be of any use for impeachment purposes. Lewis v. United States, supra; Ogden v. United States, supra; United States v. Sheer, 278 F.2d 65 (7 Cir. 1960).

The main thrust of the Government's argument is two-fold: first, that counsel for the defendants had completed his cross-examination, the argument being that the language of the Act "does not, by any interpretation, call for production after cross-examination has been completed, which is the situation here;" second, that the error was harmless.

The difficulty is that the record does not bear out the Government's claim that the motion to produce was not timely made. To be sure, the defendants' counsel stated, in effect, at the conclusion of the first day of trial, that he had completed his cross-examination of McCullough. However, when the trial was resumed he was granted permission to recall the witness "for further cross-examination." In the ensuing interrogation the proper foundation was laid for the motion to produce. Although the cross-examination was not focused upon McCullough's direct testimony or matters related to the marihuana transactions, we are persuaded that the laying of the foundation was proper cross-examination; indeed, it is ordinarily through

cross-examination that the defendant ascertains that there is a basis for invoking the Jencks Act.

Perhaps it may be more desirable to explore the question whether a statement was given at the outset of the cross-examination. This, however, is not a requirement of the law. The statute does not purport to delineate the exact time, *following direct examination* of a witness, that the request for production of the statement must be made. As we have seen, such a statement is restricted for use in impeachment and the defendant must tender to the court the question of the producibility of the document at a time when it is possible for the court to order it produced. Thus, it would appear that inquiry as to a Jencks Act statement is proper at any stage of the cross-examination. Here, although the subject was not delved into until the witness was recalled, the inescapable fact is that the subject was explored and the request made at a time when the court could have ordered the statements produced, and at a time when the defense could have determined whether the statements were of value for impeachment of the witness.

The record does not reveal the nature and scope of the colloquy or conference in the Judge's chambers prior to the convening of court on the second day of the trial. We assume, however, from the Judge's comment in denying the request "We discussed this matter in chambers this morning" that he was informed of the intention of counsel to request leave to further cross-examine McCullough. Whether this circumstance would have justified the court, in the exercise of its judicial discretion, to deny the request to engage in further cross-examination need not be explored and resolved. We must determine the issue on the record as we find it.

In summary, we conclude and hold that the request was timely and that the court erred in denying the same.

Neither are we impressed with the Government's suggestion that the defendants' failure to move to strike McCullough's testimony constituted a waiver of their right to examine the statements. Subsection (d) of 18 U.S.C.A. § 3500 provides: "If the United States *elects not to comply with an order of the court* \* \* \* to deliver to the defendant any such statement, \* \* \* the court shall strike from the record the testimony of the witness \* \* \*." (Emphasis supplied). Here there was no order requiring production. In our case of Karp v. United States, supra, involving a similar procedural situation, we indicated that subsection (d) did not apply. We said at p. 849 of 277 F.2d:

"This subsection of the statute, while not particularly applicable to the facts here since the court did not order the production of the statement, affords some assistance in determining the effect of the erroenous exclusion of a statement."

Inasmuch as the denial of the defendants' right to examine the statements resulted from the court's action and not from the failure of the Government to comply with an order, we hold that the provisions of subsection (d) are not germane and that defendants did not waive their right by failing to move to strike the witness' testimony.

There remains the Government's second prong of its first contention, to wit, that the error was harmless. We are not so persuaded. The district court was of the view that McCullough's testimony was not contradictory to or inconsistent with his written statements.[3] But the district court may not permissibly withhold a Jencks Act statement on its determination that the contents of the

3. During the course of cross-examination of another Government witness the court made this observation:

"I have read the statements, the report that was made by Willie Green [McCullough] and signed, with the exception of the first page, the report dated September 3rd; it is almost verbatim, it is in almost exact accordance with the witness' testimony."

statement are consistent with the witness' testimony. The Supreme Court has announced that "＊ ＊ ＊ whether the statements may be useful for purposes of impeachment is a decision which rests, of course, with the defendant himself." Scales v. United States, 367 U.S. 203, 258, 81 S.Ct. 1469, 1501, 6 L.Ed.2d 782 (1961); and that "An appellate court should not confidently guess what defendant's attorney might have found useful for impeachment purposes in withheld documents to which the defense is entitled." Rosenberg v. United States, supra, at p. 371, 79 S.Ct. at p. 1234.

The four subject statements made and signed by McCullough have been examined by us. They consist of approximately seven single spaced typewritten pages and recite in detail the movements and activities of the Government's informer in connection with some of the purchases made by him. Obviously, the Government's case rested in large part on the testimony of this witness. While it is apparent that his testimony does coincide with his written reports or statements as to pertinent matters, we are convinced that counsel for defendants was entitled to make the determination whether such statements were beneficial for impeachment purposes.

*Points (2) and (3).* Defendants assert (Point 2) that the court erred in failing to suppress information obtained by a narcotic agent from listening to a telephone conversation between defendant Rowell and informer McCullough; and (Point 3) in denying motion to dismiss the information for failure to name the transferee of the marihuana.

We have considered both of these points and are convinced that they are lacking in substance.

■ Defendants concede in their brief that "various courts have held such use of an extension [telephone] not to be a violation of this statute [47 U.S.C.A. § 605]." The law applicable to our facts is against defendants, Rathbun v. United States, 355 U.S. 107, 78 S.Ct. 161, 2 L. Ed.2d 134 (1957); United States v.

Pate, 330 F.2d 126 (7 Cir. 1964). Moreover, the record fails to disclose any prejudice to the defendants as a result of the incident in question. The telephone conversation was not related to the jury and so far as we are able to ascertain, it played no part in the prosecution.

■ It was not necessary for the indictment to allege the name of the transferee, Lewis v. United States, supra, and cases there cited. Additionally, after the motion was filed attacking the indictment the Government filed a bill of particulars stating the name of the transferee.

*Entrapment Issue.* The district court concluded there was "no evidence suggesting entrapment" and refused to submit this issue to the jury.

The law applicable to the defense of entrapment is clear. See Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932); Cross v. United States, 347 F.2d 327, and cases there cited (8 Cir. June 23, 1965).

■ Realizing that in another trial additional evidence may be forthcoming which could have a pertinent bearing on this issue, we pretermit determining whether on this record the entrapment defense should have been submitted. It is appropriate, however, to observe that ordinarily this defense raises a question of fact which should be submitted to the jury under proper instructions. Sorrells v. United States, supra; Cross v. United States, supra. However, submission is not required when evidence of entrapment is entirely lacking. United States v. Markham, 191 F.2d 936, 937 (7 Cir. 1951).

For the reasons stated the judgments of conviction are reversed and the cause is remanded.

JOHNSEN, Chief Judge (dissenting).

It does not seem to me that this situation calls for a reversal under the Jencks Act. Looking at the proceedings in their whole, I get the conviction that what realistically is involved is a tactical game which has now worked out as appellants'

employed, experienced counsel designed and hoped that it might.

The trial was one of two-days duration. It consisted wholly of testimony by Government witnesses. No evidence of any nature was offered on behalf of appellants. Counsel for appellants simply engaged in vigorous and detailed cross-examination. His efforts occupy almost half of the record before us. He did not succeed, however, in shaking any of the material facts to which the witnesses strongly testified.

In the case of three of the witnesses, he began his cross-examination by making a request under the Jencks Act for any statements which they had given, and these were duly produced and turned over to him. In the case of the witness McCullough, however, he did not make any such request, but his strategy was to give the witness a good raking-over and to attempt to belittle his character on the basis of reference to his previous law violations, implication as to what the type of his associations must have been and emphasis of his status as a "stool-pigeon".

McCullough was on the stand for a whole afternoon. The session concluded with recross-examination, announcement by appellants' counsel of "no further questions", and excusal of the witness from the stand. In the colloquy of the following morning when his Jencks Act demand was denied, he conceded that "there is no question but what counsel for defense indicated that he was through with cross-examination at this time".

But he had come back that morning with what seems to me a designed game. His statement in the record shows that he went into the judge's chambers and "made an informal demand in chambers about the production, under Title 18, Section 3500, of statements of Mr. McCullough". The record does not contain the conversation which occurred, but the implication is obvious from what he later did that the court indicated to him, as I believe it naturally could be expected to do in the circumstances, that his request came too late, and that he had waived his right under the Jencks Act as to the witness's concluded testimony.

Counsel then moved forward to lay his trap. He knew full well from the earlier chamber proceedings that any request by him for the statement of McCullough would be denied. So he did not make that approach, but sought to cover up his tracks by asking leave "to recall Mr. McCullough to the stand for further cross-examination". The implication of this, in the light of what had occurred in chambers, would be that there were some material matters in the witness's testimony which had not previously been covered. The Court accordingly permitted the witness to be called back to the stand. In doing so, however, it seems clear that the Court was intending to allow him merely to go into anything which had not been covered, and not to replow the previous day's terrain.

But counsel had nothing further that he wanted to go over with the witness. He engaged in no cross-examination as to any part of the witness's testimony. He merely asked the witness whether he had given any written statement (as he would know had been done from the nature of the case, from his experience as a criminal lawyer and from his previous request in chambers) and then made his Jencks Act demand. He knew, of course, that the demand would be refused. He wanted it refused. If he had really wanted to get his hands on McCullough's statement, he would, of course, have dug up some question which had not been previously covered and then demanded that McCullough's statement be produced in relation to it. But that was not what he was after. He was only after the reversal which he is now getting here.

I do not believe that we ought to permit this kind of a tactical game to be played in a criminal case. It seems to me that neither the purpose of the Jencks Act nor the interest of justice calls for this reversal.