THE STATE OF OHIO, APPELLEE, *v.* SAMPSON, APPELLANT.

(No. 86AP-1156—Decided June 25, 1987.)

*Michael Miller,* prosecuting attorney, and *Bonnie L. Maxton,* for appellee.

*Myron Shwartz,* for appellant Mark Allen Sampson.

REILLY, J. This is an appeal from a judgment of the Franklin County Court of Common Pleas.

Defendant was indicted on one count of aggravated vehicular homicide (R.C. 2903.06) with a specification alleging physical harm. He entered a not guilty plea, which he later withdrew, and pleaded no contest to the indictment including the specification. He was sentenced to two and one-half years in jail and his license was permanently revoked pursuant to R.C. 4507.16.

The facts, read into the record at the no contest plea, are as follows: Wendy Burke, nineteen years of age, on December 15, 1985 was walking to work along Livingston Avenue when she was struck by defendant's truck. He did not stop but continued three hundred feet down the road where he was involved in a head-on collision with another vehicle. Several witnesses observed that defendant was intoxicated.

Defendant was taken to the county jail and administered a Breathalyzer test. His blood-alcohol content was .27. He did not mention that he had been involved in another accident. His truck was impounded by the police because of the second accident which resulted in the OMVI arrest. There were no other OMVI arrests made that night on that stretch of road. The victim's body was not discovered until the following morning.

Thereafter, on January 2, 1986, defendant was indicted for aggravated vehicular homicide when paint chips taken from his truck were analyzed and found by the Columbus Police Crime Lab to be identical to the paint chips recovered from under the victim's body.

The court overruled defendant's motion to dismiss prior to his no contest plea. Defendant contended that the state had destroyed his truck which

prevented him from conducting his own comparative analysis of the paint chips.

Sergeant Jerry Kimmel, supervisor of the police impounding office and custodian of the records, testified at the motion hearing that the impounding lot took custody of defendant's truck on December 15, 1985. He stated that the truck remained at the lot until it was classified as a junk vehicle pursuant to statute on February 5, 1986. Later the truck was removed from the impounding lot and destroyed by an outside contractor.

Sergeant Kimmel testified that defendant's vehicle was authorized to be released on December 17, 1985. He stated that once a vehicle is authorized to be released, the owner may recover it at the lot. Kimmel also testified that the records do not reflect that either defendant or anyone else had attempted to claim the truck prior to its removal from the impounding lot.

Sergeant Kimmel stated that he was unaware that the truck was evidence in a vehicular homicide investigation or that paint chip samples had been removed. The sergeant's testimony was that the records are used mostly for administrative and not investigatory purposes. They showed that the truck was impounded in connection with an OMVI offense. He testified that he did not recall if defendant had telephoned his office, and that the impounding lot does not routinely keep records of telephone calls it receives.

After the truck was authorized for release, it remained at the impounding lot for an additional week to ten days. When the truck was unclaimed, defendant's address was obtained from his vehicle registration through the LEADS computer. A certified letter was sent to that address on January 23, 1986. Defendant was informed that he must recover the truck or it would be destroyed as a junk motor vehicle. The letter was returned by the post office "Return to Sender, No Forwarding in File, Unable to Forward" dated January 25, 1986. The vehicle was classified as a junk vehicle and subsequently destroyed by an outside contractor.

Defendant introduced a traffic ticket, on cross-examination, which he received to show that he had been living at a new address on Noe-Bixby Road. Sergeant Kimmel, however, stated that the impounding lot does not receive municipal court affidavits showing that traffic offenders have changed addresses.

Defendant testified that he had made numerous telephone calls to the impounding lot to obtain possession of his truck and some tools located in the back of the truck. He said that he called the impounding lot on December 17, 1985, the date that Sergeant Kimmel said the truck was authorized to be released, and was told that his vehicle was being held under police investigation and that he could not recover it without a release. Defendant testified, on cross-examination, that he spoke to Sergeant Kimmel on numerous occasions after December 17, which, as noted above, was the date which Sergeant Kimmel testified that the vehicle had been authorized for release.

Defendant also conceded that neither he nor anyone else had ever attempted to obtain possession of the truck during the time span when it remained on the lot from December 15, 1985 through February 5, 1986. Defendant also stated that his truck had previously been impounded and that he was familiar with the procedure for recovering vehicles.

The trial court overruled defendant's motion to dismiss and proceeded with the no contest plea. Defen-

dant advances a single assignment of error:

"The court below erred by overruling [the] motion to dismiss since appellant's due process constitutional rights were violated when police destroyed essential evidence expected to play a role in appellant's defense."

This case does not involve a suppression of evidence. There was no evidence because it had been destroyed. The state, however, did not destroy the evidence "* * * in a calculated effort to circumvent the disclosure requirements established by *Brady* v. *Maryland* [(1963), 373 U.S. 83] and its progeny * * *." *California* v. *Trombetta* (1984), 467 U.S. 479, 488. Instead, it appears that the state was acting " 'in good faith and in accord with * * * normal practice.' * * *" *Id.,* quoting *Killian* v. *United States* (1961), 368 U.S. 231, 242. The record does not include any allegations that there was a deliberate or conscious effort to suppress exculpatory evidence. *Trombetta, supra.*

In *Trombetta,* respondents were charged with driving while intoxicated. They alleged that their due process rights had been violated because California law enforcement officers had failed to preserve breath samples which respondents maintained could have been used to impeach the Breathalyzer results. The court in *Trombetta,* at 488-489, wrote, based upon *Killian, supra,* the following:

"* * * Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet the standard of constitutional materiality, see *United States* v. *Agurs,* 427 U.S., at 109-110, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. Neither of these conditions is met on the facts of this case." (Footnote omitted.)

The principles set forth in *Trombetta* are equally applicable in this case. The prosecution, as in *Trombetta,* did not destroy defendant's vehicle in a calculated effort to destroy evidence or circumvent the disclosure requirements of *Brady, supra.* Sergeant Kimmel's testimony, as noted above, indicated that he followed routine procedures in disposing of defendant's truck.

This case is distinguishable from other destruction-of-evidence cases since defendant had the opportunity to obtain the alleged significant evidence for analysis prior to its destruction. There was sufficient evidence that defendant could have secured possession of the paint chips by retrieving his truck during the six-week interim from the date of the truck's release on December 17, 1985 until the truck was removed from the lot on February 5, 1986.

Defendant admitted conversing with Sergeant Kimmel on December 17, the date which the latter testified that the truck was authorized to be released, and on numerous occasions thereafter. Defendant never attempted to claim the truck personally, despite the fact that he alleged that he was quite concerned about obtaining his tools stored in the back of his truck. Although defendant testified he knew the truck remained at the impounding lot, he stopped calling there after the date of his indictment on January 2, 1986. In any event, there was no due process violation simply because defendant was unable to conduct an independent test to determine whether the paint chip scrapings taken from the truck matched those found under the victim's body.

Moreover, defendant did not show that an independent examination of the truck's paint by his own expert would have resulted in a greater probability of acquittal. Further, there was sufficient evidence before the trial court to conclude that the state followed routine procedures in disposing of the truck; that defendant could have reasonably obtained possession of the truck prior to its destruction; that there was no evidence that the state deliberately destroyed the truck to suppress evidence or circumvent the disclosure requirements of *Brady, supra*; that the truck had no apparent exculpatory value; and that defendant was not without reasonable alternate means of investigating and preparing his case.

Defendant's assignment of error is overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

YOUNG and BRYANT, JJ., concur.