**The STATE of Ohio, Appellee,**

v.

**RANKIN, Appellant.**

[Cite as *State v. Rankin* (1992), 82 Ohio App.3d 276.]

Court of Appeals of Ohio,
Brown County.

No. CA91–12–022.

Decided Sept. 21, 1992.

*R. Alan Corbin,* Brown County Prosecuting Attorney, for appellee.

*Randall M. Dana,* Ohio Public Defender, and *J. Michael Westfall,* Assistant Public Defender, for appellant.

---

*Per Curiam.*

Defendant-appellant, Pamela S. Rankin, appeals convictions in the Brown County Court of Common Pleas for vehicular homicide, aggravated vehicular homicide, and aggravated vehicular assault.

On May 18, 1991, appellant was involved in a motor vehicle accident with five motorcyclists. Three of the motorcyclists died immediately and one was seriously injured. As a result of the accident, the Brown County Grand Jury returned a four-count indictment against appellant on May 28, 1991. Counts one, two and three charged appellant with aggravated vehicular homicide pursuant to R.C. 2903.06(A). These three counts were each accompanied by a specification that appellant was under the influence of alcohol at the time of the offense. Count four charged appellant with aggravated vehicular assault pursuant to R.C. 2903.08(A).

A jury trial commenced on September 16, 1991. The evidence showed that at approximately 10:30 p.m. on the day in question, appellant was traveling southbound on State Route 68 and the motorcycles were traveling northbound going about fifty miles per hour. Appellant had just navigated a gradual curve and was driving on a straight stretch of highway. Eyewitnesses testified that appellant's car suddenly swerved across the center line into the northbound lane and hit the motorcycles. Expert witnesses who reconstructed the accident testified that appellant was at least three or four feet left of center at the time of impact with the first motorcycle. Eyewitnesses also testified that following the accident, appellant smelled of alcohol and leaned against her car. She was belligerent and "foul mouthed" and seemed oblivious to the carnage around her.

Appellant was subsequently taken to the hospital where she was interviewed by an investigator for the State Highway Patrol. Appellant told the investigator that the motorcycles suddenly came into her lane and she hit them. She claimed she had two beers approximately six hours prior to the accident. However, the investigator noticed a distinct odor of alcohol and asked appellant to take a blood-alcohol test. Appellant consented to the test, the results of which showed that appellant's blood-alcohol level was .231.

Appellant's defense was that her car had been having mechanical difficulties and the loss of a power steering belt caused her to swerve into the other

lane. Trooper David Houghton of the Ohio State Highway Patrol testified that he found an eight-inch piece of belt off the east side of the roadway. He found the belt two days after the accident and was unable to determine if it was from appellant's vehicle or if it came from some other source. He testified that he kept the piece of belt in his car for about two days after the accident and that he later threw it away, considering it to be crash debris like small pieces of glass or chunks of vehicle. Houghton indicated that appellant never claimed her car had mechanical defects at the scene of the accident, and he could not associate the piece of belt with the crash. He did testify that upon later observation of appellant's vehicle, he determined that the fan belt was missing. Based on his experience with other crashes of similar nature, Houghton believed that the fan belt had been cut during the crash.

Appellant presented the testimony of an expert forensic scientist with substantial experience in accident reconstruction. The expert testified that the power steering belt was missing from appellant's vehicle and that the power steering reservoir was empty. He stated that he thought it would be important that the power steering belt be evaluated. The expert also testified that he had a suspicion that there may have been some problem with the power steering prior to the accident and that the loss of power steering out of a curve could have been a contributing factor in appellant moving left of center. However, on cross-examination, he acknowledged that if the power steering belt was lost in the curve, there would be a gradual movement left of center and that it would be possible for a motorist to straighten out the vehicle and stay in the proper lane. Additionally, a mechanic who was called by the state as an expert witness testified that neither the fan belt nor the power steering belt was on appellant's vehicle following the accident. He testified that if the power steering belt had come off appellant's vehicle, there would be a very slight effect on her steering and she would be able to maintain normal control. Any effect on steering would be gradual and would not cause a sudden lurch into another lane of traffic.

After hearing all the evidence, the jury found appellant guilty of two counts of aggravated vehicular homicide, one count of the lesser included offense of vehicular homicide, and one count of aggravated vehicular assault. Appellant was sentenced to serve five to ten years' imprisonment on each of the two aggravated vehicular homicide charges, to be served consecutively. She was also sentenced to serve three to five years on the aggravated vehicular assault to be served consecutively with the sentences on both of the aggravated vehicular homicide charges. On the vehicular homicide charge, she was sentenced to serve six months concurrently with the sentences on the other three counts. This appeal followed.

Appellant presents two assignments of error for review. In her first assignment of error, appellant states that the state breached its good faith duty to properly preserve evidence, which denied her due process of law. She argues that the improper disposal of the belt found at the scene of the accident deprived her of an opportunity to present potentially exculpatory evidence. We find this assignment of error is not well taken.

In *Brady v. Maryland* (1963), 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–1197, 10 L.Ed.2d 215, 218, the United States Supreme Court held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment. Subsequently, in *California v. Trombetta* (1984), 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413, the court discussed the issue of the prosecution's duty to preserve evidence in terms of fundamental fairness and the criminal defendant's right to present a complete defense. See, also, *State v. Purdon* (1985), 24 Ohio App.3d 217, 219, 24 OBR 395, 494 N.E.2d 1154. In *Trombetta*, the respondents were charged with driving under the influence and submitted to intoxilyzer tests. Their breath samples were subsequently destroyed by police. In holding that the destruction of the samples did not destroy the respondents' due process rights, the court stated:

"To begin with, California authorities in this case did not destroy respondents' breath samples in a calculated effort to circumvent the disclosure requirements established by *Brady v. Maryland* and its progeny. In failing to preserve breath samples for respondents, the officers here were acting 'in good faith and in accord with their normal practice.'" *Trombetta, supra,* 467 U.S. at 488, 104 S.Ct. at 2533, 81 L.Ed.2d at 422 quoting *Killian v. United States* (1961), 368 U.S. 231, 242, 82 S.Ct. 302, 308, 7 L.Ed.2d 256, 264–265. Accord *Arizona v. Youngblood* (1988), 488 U.S. 51, 57–58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281, 289 (" * * * [U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process.").

The court went on to state:

"Whatever duty the Constitution imposes on the states to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality * * *, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." (Citations omitted.) *Trombetta, supra,* at 488–489, 104 S.Ct. at 2534, 81 L.Ed.2d at 422.

In the present case, the belt had no apparent evidentiary value at the time it was discovered, and its destruction was not the result of bad faith on the part of the state. Trooper Houghton found the belt two days after the crash. He was not certain of its origin and he considered it to be crash debris. He did not consider it to have any evidentiary value, particularly since appellant never made any claim the night of the accident that her car was having mechanical defects. Instead, she claimed that the motorcyclists veered into her lane.

Further, there is no showing that the belt itself was material. Appellant had alternative means of obtaining comparable evidence. See *State v. Sampson* (1987), 36 Ohio App.3d 166, 168–169, 521 N.E.2d 1149, 1151–1152. Both appellant's and the state's expert witnesses testified extensively as to the effect the loss of the power steering belt would have had on appellant's ability to control her vehicle. Thus, the actual presence of the belt itself was not crucial to the defense in view of the fact the defense was able to explore all important aspects of this issue. Also, the jury was well aware of the existence of this piece of belt and was presented with substantial testimony as to its importance. Further, appellant has not shown that the presence of the belt itself would have resulted in a greater probability of acquittal. *Sampson, supra*, at 169, 521 N.E.2d at 1151–1152. See, also, *State v. Johnston* (1988), 39 Ohio St.3d 48, 529 N.E.2d 898, paragraph five of the syllabus. Even appellant's expert concluded that the loss of the power steering belt would result in a gradual movement left of center and not a veering or lurching movement. The eyewitnesses all testified that appellant's movement left of center was very sudden and not gradual. Further, the driver of the vehicle just ahead of the motorcyclists testified that she noticed nothing unusual or erratic about appellant's car as it passed her just moments before the crash. This evidence, together with the overwhelming evidence of appellant's intoxication, shows that the disposal of the belt was not sufficient to taint the outcome of the trial.

We conclude that the state did not violate a duty to preserve evidence by disposing of the belt found at the scene of the accident. Accordingly, appellant's due process rights were not violated and her first assignment of error is overruled.

In her second assignment of error, appellant states that the trial court erred by sentencing her to serve the maximum prison sentence allowed by law. Appellant claims that the trial court did not consider the mitigating factors set forth in R.C. 2929.12. We find this assignment of error is not well taken.

The trial court has broad discretion in matters of sentencing, and its decision regarding sentencing will not be reversed on appeal absent an abuse

of discretion. *Toldeo v. Reasonover* (1965), 5 Ohio St.2d 22, 34 O.O.2d 13, 213 N.E.2d 179, paragraph one of the syllabus; *State v. Yontz* (1986), 33 Ohio App.3d 342, 343, 515 N.E.2d 1012, 1013–1014. R.C. 2929.12(C) sets forth mitigating factors which "do not control the court's discretion, but shall be considered in favor of imposing a shorter minimum term of imprisonment for a felony for which an indefinite term of imprisonment is imposed[.]" The trial court is presumed to have considered the factors contained in R.C. 2929.12(C) unless there is a showing to the contrary. *State v. Adams* (1988), 37 Ohio St.3d 295, 525 N.E.2d 1361, paragraph three of the syllabus; *State v. Crouse* (1987), 39 Ohio App.3d 18, 20, 528 N.E.2d 1283, 1285–1286.

■ Appellant claims that the record affirmatively shows that the trial court did not consider the factors set forth in the statute. We disagree. After the victims' families gave statements, appellant was given the opportunity to make a statement. At that time, she said she was sorry for what she had done, and she made reference to her age and lack of any other criminal record. Her attorney made arguments on her behalf during which he referred to her family history, her character, her age and her lack of any criminal record. He further alluded to the fact that she was a new driver and mentioned the sentencing criteria the court was to examine. Additionally, the trial judge, in his remarks prior to sentencing, discussed the specific nature and circumstances of the case and counsel's argument on appellant's behalf. In sum, the record is not just silent on the issue, but affirmatively shows that the trial court considered the mitigating factors set forth in the statute. Accordingly, we cannot conclude that the trial court's decision to impose the maximum sentence was so arbitrary or unreasonable as to connote an abuse of discretion. See *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 174, 404 N.E.2d 144, 147–148. Accordingly, appellant's second assignment of error is overruled.

The assignments of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment or final order herein appealed from be, and the same hereby is, affirmed.

*Judgment affirmed.*

JONES, P.J., KOEHLER and WALSH, JJ., concur.